NUMBER 13-03-231-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


HECTOR JAVIER PAEZ, Appellant,


v.



THE STATE OF TEXAS , Appellee.

 


On appeal from the 339th District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Hinojosa and Yañez


Memorandum Opinion by Justice Yañez


 

 A jury convicted appellant, Hector Javier Paez, of murder and assessed his
punishment at twenty years' imprisonment and a $10,000 fine. In five issues, appellant
contends the trial court erred by (1) excluding certain evidence regarding the victim's prior
violent behavior (issue one), and (2) denying his requests for a mistrial following improper
argument by the State (issues two through five). We affirm.

I. Background


 The factual background of this case is well known to the parties and will not be
repeated at length in this opinion. Appellant was convicted of murdering Alvaro Barretto,
owner of the Crystal Nite Club in Houston, Texas. In the early morning hours of December
18, 1997, appellant was at the club drinking with his brother, John Paez, and several other
friends. Appellant testified that he was talking to a friend in the rear hallway of the club
when Barretto confronted him and angrily accused him of arguing in the club. Barretto was
accompanied by Jaime Ross, a bouncer at the club. Barretto ordered Ross to escort 
appellant and John out the club's back door to the alley. According to appellant, Barretto
then attacked John and started beating him. At some point, Ross grabbed John with one
hand and raised his other hand (which held a "black object") to hit John. Appellant pulled
a knife from his pocket and stabbed Ross. As Barretto was charging toward John,
appellant stepped between them and Barretto knocked him to the ground. Accoridng to
appellant, Barretto hit him several times; appellant tried to defend himself by "swinging
back" with the knife in his hand. As appellant and Barretto continued to fight on the
ground, appellant testified that the knife "made contact" with Barretto. When Barretto
released him, appellant and John ran away from the club. Barretto later died from the stab
wounds. 

II. Standard of Review and Applicable Law


 A trial court has discretion to decide the admissibility of evidence and, absent an
abuse of discretion, its rulings will not be overturned. (1) To determine whether a trial court
has abused its discretion, this Court will consider "whether the [trial] court acted without
reference to guiding rules and principles; that is, whether the court acted arbitrarily or
unreasonably." (2) If a trial court's decision is correct under any theory of law, the decision
should not be disturbed even if the trial court gave the wrong reason for its ruling. (3)

 A defendant may present reputation or specific act evidence to show a victim's
character and demonstrate that either the defendant had a reasonable fear of the victim,
or the victim was, in fact, the aggressor. (4) However, such evidence is admissible only if it
has relevance apart from its tendency to prove the deceased acted in conformity with his
character, and in so far as it tends to explain the deceased's outward aggressive conduct
at the time of the killing. (5) In the context of proving the deceased was the first aggressor,
specific, violent acts are relevant to the extent that they demonstrate the deceased's intent,
motive, or state of mind. (6) In a murder prosecution where a defendant claims self-defense,
the deceased's prior threats may be admitted, even though those threats were not directed
at the defendant, "[a]s long as the proffered [threats] explain the outward aggressive
conduct of the deceased at the time of the killing, and in a manner other than
demonstrating character conformity only." (7)

 Exclusion of evidence does not result in reversible error unless the exclusion affects
a substantial right of the accused. (8) An error affects an appellant's substantial right when
it has a "substantial and injurious" effect or influence in determining the jury's verdict. (9)
Thus, even if the trial court erred in excluding evidence offered by the appellant in the
present case, we must affirm appellant's conviction if, after examining the record as a
whole, we are left with the fair assurance that the error did not influence the jury or
influenced the jury only slightly. (10)

III. Analysis


A. Excluded Testimony


 In his first issue, appellant contends the trial court erred by excluding certain
testimony offered by appellant concerning several instances of violence committed by
Barretto. Appellant contends the excluded testimony was critical in establishing his
reasonable fear of Barretto and that Barretto was the aggressor. The trial court limited
appellant's testimony to specific acts of violence by Barretto that appellant had witnessed
and incidents that he was told about by others who had witnessed or experienced such
incidents. At the close of testimony, appellant presented a bill of exception specifying that
he would have testified as to the following prior acts of violence by Barretto: (1) a 1992
incident in which Barretto beat up George Giaconna in front of the Crystal Night Club; (2)
a 1996 incident in which Barretto beat up "Little Fernando;" (3) a 1996 incident in which
Barretto and his brother severely beat up a man named "Willy;"(4) a 1997 incident in which
Alex Hamilton was taken outside and beaten by Barretto and bouncers at the club; and (5)
an incident that occurred sometime between 1995 and 1997 in which Barretto shot his
father-in-law. Appellant's counsel argued that the excluded testimony was "relevant and
admissible for purposes of showing [appellant's] knowledge and state of mind." The State
objected that (1) the probative value of the testimony was substantially outweighed by its
unfair prejudice under rule 403 (11) and (2) other witnesses had presented testimony
regarding "issues that would go to [appellant's] state of mind." The court noted that the
testimony regarding "someone named Willy," Alex Hamilton, and the "alleged shooting of
the father-in-law" was "rank hearsay" and "incompetent evidence." 

 We conclude that the trial court did not abuse its discretion in excluding the
complained-of testimony. Moreover, because most of the same or similar testimony was
presented to the jury either by appellant or other witnesses, appellant cannot show that he
was harmed. Appellant was allowed to testify that (1) in 1992, he saw Barretto beat up
Javier Pulido in the parking lot of the club; (2) in 1996, he saw Barretto attack a customer
with shoulder-length hair in the club; the customer was then escorted outside by bouncers;
(3) in 1997, he saw Barretto attack a customer on the sidewalk outside the club; bouncers
then escorted the man inside the club; (4) in 1997, he saw another incident involving two
customers who were arguing on the sidewalk outside the club; Barretto beat one of the
men and bouncers took him inside the club; (5) in 1997, at another club owned by Barretto,
the Casa Corsa Club, he saw Barretto fighting with a man in the parking lot; several
bouncers took the man inside the club; and (6) in 1997, he saw a second incident at the
Casa Corsa Club, in which Barretto attacked a man on the sidewalk; several bouncers
joined the fight, which resulted in severe injuries to the man. At the end of his testimony,
appellant restated that he witnessed Barretto assaulting customers on at least six different
occasions. 

 Brian Pham, a friend of appellant's who was at the club the night of the killing,
testified that he once saw Barretto assault a customer. Valdamar San Miguel testified that
in mid-1997, Barretto and several bouncers escorted him out the back door of the club into
the alley, where he was beaten. 

 John testified that in 1996, while in line at the club with a friend, Carlos Masetti, he
saw Barretto slap a customer who was challenging the club's dress code. John testified
that on another occasion in 1996 at the club, he and appellant saw Barretto hit a Hispanic
customer with shoulder-length hair. Shortly thereafter, John and appellant saw two
bouncers escort the customer toward the back door of the club. John also testified that in
1992, Bruce Pham told him and appellant about an incident in which Barretto severely beat
George Giaconna in front of the club. John testified that in 1996, appellant told him that
he heard that "Little Fernando," an acquaintance, was taken to the back of the club by
bouncers and beaten by Barretto. John testified that in 1997, he observed Barretto hit a
customer of Chinese descent; the bouncers then escorted the customer out the front door
of the club. John testified that Barretto had a reputation as a "violent man." 

 We agree with the trial court that most of the testimony offered in the bill of
exception "ha[d] already come out." Because the jury had already heard ample evidence
regarding Barretto's reputation for violence, appellant cannot show that he was harmed by
the trial court's exclusion of his testimony. (12) We overrule appellant's first issue. 

B. Improper Jury Argument


 In issues two through five, appellant complains of various instances of allegedly
improper jury argument. Appellant contends that during closing argument, the "prosecutor
repeatedly injected facts that were not in evidence" in an attempt to defeat appellant's
claims of self-defense and defense of a third person. Specifically, appellant complains of
the following comments by the prosecutor: (1) a reference suggesting that customers
previously beaten by Barretto would have sued the club; (2) a mistaken reference to "Javier
Pulido," when referring to the incident involving "Little Fernando;" (3) a suggestion that the
customers who were beaten by Barretto may have caused disturbances; and (4) a
statement regarding appellant's self-defense claim that "we don't let you bring a knife to
a fistfight." In each instance, the trial court sustained appellant's objection, instructed the
jury to disregard the comment, and denied appellant's request for a mistrial. 

 We review a trial court's denial of a motion for mistrial for abuse of discretion. (13) The
asking of an improper question, by itself, will seldom call for a mistrial. (14) When the trial
court sustains an objection and instructs the jury to disregard but denies a defendant's
motion for mistrial, the issue is whether the trial court abused its discretion by denying the
mistrial. (15) The determination of whether such an abuse of discretion occurred is made by
examining (1) the severity of the alleged misconduct, (2) the curative measures that were
taken, and (3) the certainty of conviction absent the improper question. (16) Otherwise, an
instruction to disregard generally suffices. (17) Generally, we presume the jury follows the trial
court's instructions and that a limiting instruction cures any harm. (18) 

 The standard of review for improper jury argument is to review the record in its
entirety to determine whether any erroneous statements were made, and if so, whether
they were so prejudicial as to deprive the appellant of a fair and impartial trial. (19) 

 Here, two of the comments were directed at impeaching the testimony regarding
Barretto's prior violent acts, one comment involved the prosecutor confusing one victim
with another, and one comment involved the use of the knife in self-defense. In each case,
the trial court promptly instructed the jury to disregard the comment. We conclude that
none of the complained-of comments were so manifestly improper and inflammatory that
an instruction to disregard could not cure each statement's alleged prejudicial effect. (20) We
overrule appellant's second, third, fourth, and fifth issues.

 We affirm the trial court's judgment. 


 

 LINDA REYNA YAÑEZ,

 Justice





Do not publish. Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 31st day of August, 2006.

 

 

 

 
1. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). 
2. Fox v. State, 115 S.W.3d 550, 558 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd). 
3. See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).
4. See Tate v. State, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998).
5. Id. at 193. 
6. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).
7. Hayes v. State, 161 S.W.3d 507, 509 (Tex. Crim. App. 2005) (quoting Torres, 71 S.W.3d at 761-62). 
8. See Tex. R. App. P. 44.2(b); Wilson v. State, 90 S.W.3d 391, 393 (Tex. App.-Dallas 2002, no
pet.). 
9. Wilson, 90 S.W.3d at 393. 
10. See id.

11. See Tex. R. Evid. 403. 
12. We also note that in the punishment phase, the jury found that appellant acted in "sudden
passion arising from an adequate cause."
13. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).
14. Moore v. State, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994).
15. See Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Primes v. State, 154 S.W.3d
813, 814 (Tex. App.-Fort Worth 2004, no pet.). 
16. Hawkins, 135 S.W.3d at 77. 
17. See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (noting that ordinarily, a
prompt instruction to disregard will cure error associated with an improper question and answer); Primes,
154 S.W.3d at 815. 
18. Moore, 882 S.W.2d at 847. 
19. Willis v. State, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989). 
20. See Hawkins, 135 S.W.3d at 77.