**Reversed and Remanded and Opinion Filed August 28, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00332-CR

### JAMES ANTHONY KIRVIN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 060407-59**

## MEMORANDUM OPINION
Before Justices Bridges, O'Neill, and Brown
Opinion by Justice Bridges

James Kirvin appeals one conviction of indecency with a child by sexual contact, one conviction of aggravated sexual assault of a child, and one conviction of attempted indecency with a child by sexual contact. A jury convicted appellant, and the trial court sentenced him to fifteen years' confinement, eight years' confinement, and thirty-five years' confinement, respectively. In three points of error, appellant contends (1) the trial court erred in allowing testimony from a second outcry witness for one child complaining witness, (2) the trial court erred in allowing the State to present evidence and testimony concerning the credibility of the two child complaining witnesses over defense objection, and (3) his trial counsel was ineffective for failing to object to multiple State witnesses testifying regarding the credibility of the two child complaining witnesses. We reverse the trial court's judgment and remand for a new trial.

Appellant was indicted in March 2011 as having engaged in ten counts of sexually based offenses. The State proceeded with Counts 1, 2, and 3 only, as follows:

COUNT 1

with the intent to arouse or gratify the sexual desire of said defendant, cause M.G., a child younger than 17 years, to engage in sexual contact by causing the said M.G. to touch the genitals of the defendant,

COUNT 2

with the intent to arouse or gratify the sexual desire of said defendant, cause A.S., a child younger than 17 years, to engage in sexual contact by causing the said A.S. to touch the genitals of the defendant,

COUNT 3

intentionally or knowingly cause the sexual organ of A.S., a child who was then and there younger than 6 years of age, to contact the mouth of the defendant,

M.G. is the victim described in Count 1, whereas A.S. is the victim described in Counts 2 and 3. They are distant cousins who went to the home of A.S.'s grandmother, Pamela Snell, to play and spend the night on or about July 4, 2009. At the time, they were both under the age of six. M.G.'s grandmother, Charlene Wright, is a sister of Pamela's mother, Barbara Snell. Appellant was living with Pamela at the time.

M.G. testified she went to Pamela's house to visit with A.S. and spend the night. M.G. stated that she and A.S. asked Pamela for ice cream before Pamela left to go to the store, and Pamela told her to ask appellant. M.G. and A.S. went looking for appellant in the bathroom. M.G. testified appellant was "out of the shower and going to get his robe and he came out of the shower naked" and that he "told [her] to come here" and "pulled [her] hand and made [her] touch his privacy area." Using a naked doll, the State had M.G. point to where a man's "privacy area" is and confirm that it is "what a boy uses to go pee pee." M.G. further testified she pulled her hand away from appellant because she "didn't want to touch it," and afterward appellant told A.S. to "come here," and then "pulled her hand and tried to make her touch it" but "she yanked it

–2–

away from him." M.G. proceeded to tell Pamela what generally happened and stayed the night. The next day, Pamela took M.G. home to her grandmother, Wright.

M.G. later explained to Wright what happened at Pamela's house. Wright testified [M.G.] told her that [appellant] "was in the bathroom with the robe on. And he asked [M.G.] and [A.S.] if they wanted to pet his puppy." She stated that M.G. affirmed "puppy" was "the private part." Wright also testified that M.G. told her appellant "exposed his self" and "was putting [M.G.'s and A.S.'s] hands on his balls." Wright clarified appellant "was trying to when [M.G.] said she pulled back." Thus, Wright was the first outcry witness for M.G. regarding the indecency with a child by exposure charge. That same month, M.G. also met with Grayson County Children's Advocacy Center program director Bobbie Wieck, who interviewed her about the alleged sexual abuse. During the interview, M.G. made an outcry to Wieck regarding the indecency with a child by contact charge. Wieck testified that M.G. told her appellant "pulled her by the arm and had [M.G.] touch his butt," which referred to his penis.

The other child complainant, A.S., also testified appellant "got out of the shower and asked us to touch his privacy part and we said no, and he got [M.G.'s] hand and was trying to make her touch it." She stated M.G. "touched it a little bit and he tried to get [A.S.'s] hand, but [A.S.] didn't touch it." She further testified to the incident described in Count 3 by stating that, while she and M.G. were sleeping, appellant came into the room and "got [A.S.] out of the bed and sat [her] on his lap and it felt like a cat licking [her]."

In his first issue, appellant contends the trial court erred in allowing Wieck to testify as a second outcry witness for the child complainant (M.G.), in addition to the first outcry witness, Wright. A trial court has broad discretion in determining the admissibility of the proper outcry witness. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). The exercise of that discretion will not be disturbed unless a clear abuse of that discretion is established by the

record. *Id*.; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (trial court abuses its discretion when its ruling is outside "zone of reasonable disagreement").

The outcry testimony of a child victim is hearsay when it is offered for the truth of the matter asserted. *Dorado v. State*, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992). However, it is admissible if it falls within an exception to the hearsay rule. *Id*. Article 38.072 of the Texas Code of Criminal Procedure allows the admission of a hearsay statement made to an outcry witness by certain abuse victims, including child victims of a sexual offense. TEX. CODE CRIM. PROC. art. 38.072, § 2(a); *Lopez v. State,* 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). The outcry witness is the first person over the age of 18, other than the defendant, to whom the child spoke about the offense. *Lopez*, 343 S.W.3d at 140. To qualify as a proper outcry statement, the child must have described the alleged offense in some discernible way that is event-specific rather than person-specific and must be "more than words which give a general allusion that something in the area of child abuse is going on." *Id*. (citing *Garcia*, 792 S.W.2d at 91). Multiple outcry witnesses are permissible, but only if they testify about different events. *Id*.

Article 38.072 has additional requirements that must be met before an outcry witness may testify. *Sanchez v. State*, 354 S.W.3d 476, 484–85 (Tex. Crim. App. 2011). At least 14 days before the trial on the merits begins, the State must notify the defendant of its intention to call an outcry witness, who must be identified. *Id*. at 484. The State must provide a summary of the outcry statement that will be offered into evidence. *Id*. Furthermore, the trial court must hold a hearing outside the presence of the jury to determine "based on the time, content, and circumstances of the statement" whether the victim's out-of-court statement is "reliable." *Id*. at 484-485. The victim must either testify or be available to testify at this hearing. *Id*. at 485.

The record clearly shows that the court below held a 38.072 hearing outside the presence of the jury for the first outcry witness, Wright, and found the statements made by M.G. to be

–4–

reliable. The record also shows the court held a 38.072 hearing for outcry witness Wieck and found the statements she referred to were reliable. Furthermore, each outcry witness testified to a different event, thus complying with article 38.072.

Appellant argues Wieck should not have been allowed to testify because M.G. "first made an outcry involving her physically touching Appellant when she told Wright that Appellant made her touch his balls." In support of this argument, appellant quotes only a portion of Wright's testimony in which she stated, "[M.G.] told me that -- the only thing she told me was when he exposed his self and brought – had their hands and he was putting their hands on his balls." Immediately after, the State asked for clarification, "Okay. But he was trying to is what she told you." Wright responded, "Yeah, he was trying to when she said she pulled back." Thus, Wright was the proper outcry witness regarding the indecency with a child by exposure charge. Moreover, Wieck testified that M.G. told her "[appellant] pulled [M.G.] by the arm and had her touch his butt," confirming that "butt" was the victim's "child word" for penis. Wieck was speaking to a different event; therefore, her testimony was admissible because she was the proper outcry witness regarding the indecency with a child by contact charge. Accordingly, we overrule appellant's first issue.

In appellant's second issue, he argues the trial court erred in allowing, over objection, evidence and testimony from Denison Police detective Robbie Carney and Wieck concerning the credibility of the two child complaining witnesses. Carney was assigned the case when contacted by Child Protective Services. Carney assisted with setting up forensic interviews between the child victims and Wieck, observed the interviews, and also interviewed appellant. Appellant argues the trial court erred in overruling his counsel's objection to the admission of part of Carney's interview with appellant in which Carney notes the complainants "told him things that could not be misconstrued." Carney testified "it adds a little bit more to their honesty

. . . two victims [whose] reporting and outcries are the same . . . makes the case more believable" when asked of the significance of having two victims making claims against appellant. Carney testified that several victims getting together and planning the complaints was not behavior typical for four-year-olds and confirmed that it was atypical for them to tell the same story to different authority figures in their lives.

Appellant further argues the trial court incorrectly overruled his counsel's objection to Wieck's testimony that she found M.G. to be consistent. In response to the State's question about how to determine whether a child is lying or not, Wieck testified, "A lot of times when a child is lying they aren't consistent . . . don't make eye contact . . . they're uncomfortable talking to me." She also stated that she goes "back and forth" to make sure "[the children] are giving consistent answers." The State asked Wieck whether she found "what M.G. told [you] to be consistent." Appellant objected that the question invaded the province of the jury. The trial court overruled the objection. Wieck answered, "she was consistent and did not seem to be lying to me." Wieck also described how to identify coached children by finding inconsistencies in their stories and a lack of sensory details.

Wieck testified that few children have lied to her in the context of many interviews and described the things she looks for to "determine if a child is lying or not." Wieck testified, "A lot of times when a child is lying they use words that are beyond their age capability." In such cases, Wieck asked the child to "go back through the incident more than one time to make sure that they're consistent." The prosecutor asked Wieck if a child had more difficulty than an adult in being consistent with a lie, and Wieck answered, "Yes, because they forget what they said previously." Wieck also testified she did not have concerns about A.S. being coached, A.S. used sensory words to describe the events she described, and neither of the girls appeared to be exaggerating any of their story.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

The court of criminal appeals has cautioned that expert testimony which assists the jury in determining an ultimate fact is admissible, but expert testimony which decides an ultimate fact for the jury, such as "a direct opinion on the truthfulness of the child," crosses the line and is not admissible under Rule 702. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). The jury is the exclusive judge of the credibility of the witnesses and the weight to give their testimony, and it is the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (appellate court must give deference to jury's determination of weight and credibility of a witness's testimony). The jury is free to accept or reject any part of a witness's testimony. *Wesbrook*, 29 S.W.3d at 111.

The court of criminal appeals has held that a State expert's testimony identifying certain behavioral characteristics exhibited by sexually abused children and describing how the complainants' behavior was consistent with those behavioral characteristics is admissible. *Yount*, 872 S.W.2d at 709 (quoting *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)). An expert witness may not testify that a witness is truthful, but an expert may testify that the child exhibits symptoms consistent with sexual abuse. *Cohn*, 849 S.W.2d at 818-19. Also, evidence regarding manipulation or fantasy is distinguishable from direct comments on truthfulness because such evidence does not foreclose the possibility that the child witness may be lying. *Schutz v. State*, 957 S.W.2d 52, 68 (Tex. Crim. App. 1997). Still, expert testimony that a particular class of persons to which the victim belongs is truthful is not expert testimony of the

–7–

kind that will assist the jury, and is thus inadmissible. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Wiseman v. State*, 394 S.W.3d 582, 587-89 (Tex. App.–Dallas 2012, pet. ref'd) (trial court erred in admitting expert testimony concerning truthfulness of class of persons to which complainant belonged, i.e., children alleging sexual abuse); *Wilson v. State*, 90 S.W.3d 391, 392-94 (Tex. App.–Dallas 2002, no pet.) (recognizing expert cannot testify as to whether a person is telling the truth but finding appellant's substantial rights were not affected where record showed, among other things, appellant impregnated eleven-year-old daughter and fled the state); *Tran v. State*, No. 05-10-00621-CR, 2012 WL 1194102 (Tex. App.–Dallas April 11, 2012, no pet.) (mem. op., not designated for publication) (appellant's substantial rights affected where expert permitted to testify it has been scientifically proven that children tell the truth except in few instances where custody dispute, mental health issue, or adult coaching is involved).

Wieck's testimony that M.G. "did not seem to be lying" constituted a direct opinion on M.G.'s truthfulness. Further, the prosecutor specifically asked multiple times how Wieck could tell if a child was lying. Weick testified that neither M.G. nor A.S. exhibited behaviors that would indicate they were lying. To the extent the prosecutor asked Wieck about "consistency," or being "consistent," the record is clear the prosecutor meant consistent with lying, not consistent with behaviors exhibited by a victim of sexual assault. We conclude the admission of Wieck's testimony relating to the truthfulness of M.G. was error.

Pursuant to Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error must be disregarded unless it affects the defendant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Wilson*, 90 S.W.3d 391, 393 (Tex.

App.—Dallas 2002, no pet.). This Court will not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93. Important factors that are considered include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

Here, the evidence consisted of M.G.'s and A.S.'s testimony and the outcry witness testimony, including Wieck's testimony. There is no physical evidence of abuse in this case. This is not a case where a confession or some piece of physical evidence makes it easy to conclude that an unrelated error did not affect appellant's rights. The evidence in this case was not so powerful that we can have a fair assurance that appellant's substantial rights were not harmed. *Barshaw*, 342 S.W.3d at 93. Further, the State, in focusing its inquiry on how to tell if the child witnesses were lying and whether Wieck believed they were lying, emphasized the error far beyond a single, unsolicited reference to "lying." On the contrary, the State repeatedly sought Wieck's opinion on how to tell when children were lying. There were no instructions in the court's charge to explain how the jury was to use the expert's testimony. One of the core roles of a jury is to assess the truthfulness of the testimony it hears. Wieck's testimony invaded the province of the jury in a fundamental way by putting the weight of expert opinion behind the conclusion that the complaining witnesses were telling the truth. We conclude the error in this case affected appellant's substantial rights and was therefore harmful. *See id.* We sustain appellant's second issue. Because of our disposition of appellant's second issue, we need not address appellant's third issue.

We reverse the trial court's judgment and remand for a new trial.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130332F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES ANTHONY KIRVIN, Appellant

No. 05-13-00332-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. 060407-59.
Opinion delivered by Justice Bridges.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for a new trial.

Judgment entered August 28, 2014