Dickie Bruce WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–01–00774–CR.

Court of Appeals of Texas,
Dallas.

Oct. 16, 2002.

**392**

Douglas H. Parks, Law Office of Douglas H. Parks, Dallas, for appellant.

William T. (Bill) Hill, Jr., Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, for state.

Before Justices MORRIS, MOSELEY, and FRANCIS.

### OPINION

Opinion By Justice MOSELEY.

A jury convicted Dickie Bruce Wilson of aggravated sexual assault of a child under the age of fourteen years. The jury also found two enhancement allegations true and assessed punishment at life imprisonment. Wilson appeals. In his three issues, he asserts the trial court erred by: admitting expert testimony concerning the credibility of the child complainant; admitting evidence of an extraneous offense; and denying his motion for a mistrial when a State's witness testified concerning another extraneous offense. We affirm the trial court's judgment.

■ In his first issue, Wilson argues the trial court erred by overruling his objection and admitting expert testimony from Cindy Alexander on the credibility of M.W., the child complainant. Alexander testified that according to studies, only two to eight percent of children lie about being sexually assaulted.

Texas Rule of Evidence 702 allows "a witness qualified as an expert by knowledge, skill, experience, training, or education [to] testify . . . in the form of an opinion or otherwise." TEX.R. EVID. 702. However, rule 702 does not allow an expert to testify, in the form of an opinion or otherwise, whether the complainant or a class of persons to which the complainant belongs is truthful. See Schutz v. State (Schutz I), 957 S.W.2d 52, 70–71 (Tex. Crim.App.1997); Yount v. State, 872 S.W.2d 706, 712 (Tex.Crim.App.1993).

The State recognizes that, pursuant to *Schutz I* and *Yount*, an expert cannot testify as to whether a person is telling the truth. However, the State argues this case is distinguishable from *Schutz I* and *Yount* because the expert testimony related to whether the child complainant's behavior fell within a common pattern, and not to whether the child was truthful. We disagree.

Based on *Schutz I*, Wilson objected to the following exchange between the State and its expert, Cindy Alexander:

[State]: Ms. Alexander, you are familiar with research concerning cases involving false allegations; is that correct?

[A]: Yes, I am.

[Q]: And what do the majority of those cases or types of cases usually involve?

[A]: Custody.

[Q]: And what is the percentage, based on the research, of the percentage of false allegations compared to all cases reported?

[A]: 2 to 8 percent.

[Q]: And out of—out of that 2 to 8 percent, what is the majority of—or what types of cases consist of the majority of those allegations?

[A]: Child custody cases.

[Q]: So that would be the majority. Out of 2 to 8 percent would involve child custody allegations?

[A]: Yes.

This testimony went beyond whether the child complainant's behavior fell within a common pattern and addressed whether children who claimed to be sexually assaulted lie. Her testimony did not aid, but supplanted, the jury in its decision on whether the child complainant's testimony was credible. *See Schutz I*, 957 S.W.2d at 70–71; *Yount*, 872 S.W.2d at 712; *see also* Tex.R. Evid. 702. Therefore, the trial court erred by allowing Alexander to testify about what percentage of children lie about being sexually assaulted.

 The above error constitutes non-constitutional error; thus, we must disregard it unless it affected appellant's "substantial rights." Tex.R.App. P. 44.2(b). An error affected a substantial right "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Thus, despite non-constitutional error, we affirm a criminal conviction if, after examining the record as a whole, we are left with the fair assurance that the error did not influence the jury or influenced the jury only slightly. *Schutz v. State (Schutz II )*, 63 S.W.3d 442, 443 (Tex.Crim.App.2001) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998)); *see also O'Neal v. McAninch*, 513 U.S. 432, 438, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (error must be treated as harmful if "grave doubt" exists as to whether it had a "substantial and injurious effect or influence" upon the jury). We analyze the whole record to determine if the trial court's error had no or only a slight effect on the jury's decision; thus, we may consider the trial court's instructions to the jury and the parties' closing arguments. *Schutz II*, 63 S.W.3d at 444. Our analysis goes beyond the fact that the jury's credibility determinations had an impact on its verdict. *Id.* at 445. We consider all the evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence to determine if the error substantially affected appellant's rights. *Morales*, 32 S.W.3d at 867.

The record reflects that, at the time of trial, M.W. was twenty years old. She testified with specific detail that Wilson sexually assaulted her on numerous occa-

sions while she was between the ages of six and eleven; during most of these times Wilson was M.W.'s stepfather. She explained the sexual assaults escalated from Wilson fondling her to impregnating her at the age of eleven. Over the years and at trial, M.W. never wavered in her allegations against Wilson. Numerous doctors, psychiatrists, and counselors who treated M.W. all testified that M.W. told them Wilson sexually assaulted and impregnated her. M.W.'s medical records, admitted at trial, confirm she was pregnant when she was eleven and that she aborted the pregnancy. Additionally, the record reflects Wilson left the family home and fled the state shortly after M.W. became pregnant.

Wilson argues that Alexander's testimony about studies concerning the percentage of children who lie about being sexually abused precluded the jury from accurately determining M.W.'s credibility. He asserts that because Alexander testified studies indicate only two to eight percent of children lie about being sexually abused, the jury could not independently determine if M.W. was telling the truth. However, after the close of the evidence and before the jurors retired for deliberations, the trial court instructed them that they were the exclusive judges of a witness's credibility. During closing arguments, the State emphasized to the jurors that they were the judges of M.W.'s credibility and never referred to Alexander's testimony about the percentage of children who lie about being sexually abused. Moreover, during closing arguments, Wilson used Alexander's testimony to emphasize that up to eight percent of children who claim to be sexually assaulted *do lie* about being sexually assaulted.

Considering the record as a whole, including all the evidence presented, the nature of the evidence supporting the ver-

dict, the character of the error and its relationship to other evidence, the instructions of the court, and closing argument, we are left with the fair assurance that the trial court's error did not influence the jury or influenced the jury only slightly. *See Schutz II*, 63 S.W.3d at 443. Thus, we conclude the trial court's error did not have a substantial and injurious effect or influence in determining the jury's verdict and did not affect Wilson's substantial rights. Therefore, we disregard the trial court's non-constitutional error as harmless. *See* TEX.R.APP. P. 44.2(b). We resolve Wilson's first issue against him.

■ In his second issue, Wilson argues the trial court erred by overruling his objection and admitting M.W.'s testimony concerning an extraneous offense of Wilson assaulting her mother. An extraneous offense is admissible to explain why a victim of sexual assault did not make a prompt outcry. *Brown v. State*, 657 S.W.2d 117, 119 (Tex.Crim.App.1983). In this case, M.W. did not tell anyone about Wilson's sexual abuse until her mother learned of M.W.'s pregnancy. Furthermore, M.W. and her mother did not tell the police that Wilson sexually assaulted M.W. until two years after the termination of M.W.'s pregnancy. M.W. testified she did not make an outcry because she was scared Wilson would hurt her mother if M.W. told anyone about the sexual abuse. Because the State is allowed to present evidence on why M.W. did not promptly report the abuse, the trial court did not err by admitting M.W.'s testimony that Wilson had assaulted her mother. *See id.*

■ Further, after the court allowed the testimony by M.W. that Wilson assaulted her mother, Wilson asked for and received a limiting instruction. At trial, Wilson did not object to the wording of the limiting instruction. Nevertheless, Wilson now complains the limiting instruction given was incorrect. By not objecting at

trial, Wilson waived any complaint on appeal concerning the wording of the limiting instruction. *Plante v. State,* 692 S.W.2d 487, 493 (Tex.Crim.App.1985); *see also* Tex.R.App. P. 33.1. Because the trial court did not err by allowing M.W.'s testimony about the assault on her mother, and Wilson cannot complain about the wording of the limiting instruction, we resolve Wilson's second issue against him.

In his third issue, Wilson argues the trial court erred by denying Wilson's request for a mistrial when a State's witness testified Wilson previously had been in jail. Wilson immediately asked for and received an instruction to disregard the witness's answer. Generally, a prompt instruction to disregard will cure a witness's inadvertent reference to an extraneous offense. *Ovalle v. State,* 13 S.W.3d 774, 783 (Tex.Crim.App.2000). Unless the extraneous offense is so calculated to inflame the minds of a jury or is of such a nature as to suggest the impossibility of withdrawing the impression produced, an instruction to disregard can cure any improper impression. *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App.1992). The witness's reference to Wilson's previous incarceration was not so calculated to inflame the minds of a jury and was not of such a nature as to suggest the impossibility of withdrawing the impression produced. *Gardner v. State,* 730 S.W.2d 675, 696–97 (Tex.Crim.App.1987). Therefore, the trial court did not err by denying Wilson's request for a mistrial because the prompt instruction cured any improper impression created by the witness's answer. *See Ovalle,* 13 S.W.3d at 783. Accordingly, we resolve Wilson's third issue against him.

We affirm the trial court's judgment.