COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
 2-06-110-CR

        2-06-111-CR

 

 

ARTHUR AYALA                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Arthur Ayala
appeals from his convictions for aggravated sexual assault of a child and
indecency with a child.  In one point,
Appellant argues that the trial court erred by admitting extraneous-offense
testimony regarding several occasions when he physically beat his wife and
children.  We affirm.

                                                    








                                            Background

In 1994, Appellant lived in
Fort Worth with his wife, Elva, and their four daughters: R.A., age fifteen;
A.A., age eleven; E.A., age eight; and V.A., age three.  Elva worked two jobs. She was regularly away
from home from 4:00 a.m. to 7:00 a.m., when she would return to get the
children ready for school.  She would
then go to her day job and return home around 3:00 p.m. when the children were
returning home from school. 

In the early morning hours of
June 1, 1994, Appellant entered his daughters= bedroom, lifted up E.A. without waking her, and carried her down the
hall to his own bedroom.  E.A. woke up in
her parents= bedroom to
find Appellant Aon top of
me.@  Appellant was naked.  Though she had gone to bed wearing shorts, a
shirt, and panties, when she awoke she was wearing only her shirt.  Appellant penetrated E.A.=s vagina with his penis.  He
placed his hand over her mouth in an attempt to smother her crying and
screaming, and he hit her mouth and made her lip bleed. 

E.A. testified that Appellant
had abused her in the same way several times over the course of two years.  A.A. and R.A. knew about the abuse for about
six months before the June 1 incident but did not tell anyone because they were
scared of Appellant. 








A.A. heard E.A. screaming in
her parents=
bedroom.  As she had sometimes done in
the past, but not always, because she was scared of Appellant, A.A. walked down
the hall, pressed her ear to the locked bedroom door, and heard E.A.
crying.  She knocked on the door to ask
if E.A. was alright.  Appellant opened
the door a crack and told A.A. that her sister was okay, but A.A. did not
believe him.  When Appellant released
E.A., she returned to her bedroom and eventually told A.A. what had
happened.   

When Elva returned home from
work, Appellant was gone from the house, and she found A.A. crying in her
room.  A.A. told Elva what Appellant had
done to E.A.  Elva questioned E.A., who
told her,

[W]hen
I wasn=t
there, her father would go into her room and would pick her up while she was
still asleep and will take her to his room and undress her and will torture her
and then he will try to abuse her. 

 

E.A. was unable to tell her more because Ashe could not speak, she was crying too much.@

Elva called the police.  Appellant was arrested the same day.  He gave police a written statement in which
he admitted some aspects of the June 1 incident, including carrying E.A. to his
bedroom, stripping her, and touching her Ain her private parts,@ and stated, AI might have
put my finger inside of her ([E.A.]=s) vagina.@  He added,








I
know that I am going to pay for my mistake. 
My family is falling apart for what I did.  I know that I am going to have to pay for
what I did, stay behind bars or whatever punishment I get. 

 

Two weeks later, Appellant=s brother Alberto posted Appellant=s bond.  The next day, Appellant
told Elva that he wanted to run away to Mexico and threatened to hit her if she
did not cooperate.  Alberto, without Elva=s permission, went to Elva=s house, gathered her four daughters and some of their clothes, and
drove them to Mexico, while Elva remained at Alberto=s house with Appellant. 
Sometime later, Appellant and Elva followed them to Mexico. Elva went
only because Appellant forced and threatened her. 

Appellant, Elva, and their
daughters lived in Saltillo with Alberto=s parents-in-law for two months. 
Then they lived with Elva=s parents in Monterry for two or three years.  Eventually, Appellant was arrested in Mexico
for beating Elva.  She moved to another
house with her daughters and kept the location a secret from Appellant and even
her parents, and she had no further contact with Appellant until the time of
trial.  Elva divorced Appellant in Mexico
and returned to Fort Worth in 1998.  








The record does not reflect
the circumstances under which Appellant was apprehended and brought to trial in
2006.  A jury convicted him of aggravated
sexual assault and two counts of indecency with a child and assessed punishment
of seventy-five years= confinement
for the assault and ten years= confinement for each indecency count. 
The trial court entered judgment accordingly, and this appeal followed.

                                 Extraneous offense evidence

  The trial court admitted, over Appellant=s rule 404 objection, testimony regarding several instances when
Appellant physically abused Elva and his daughters by beating them.  A.A. testified that when Appellant hit Elva
while they were living in Monterrey, AMy mom had her lip busted really big. 
There was blood all over the walls, her clothes were all tore and her
eyes were small.@  Elva testified that Appellant hit and pushed
E.A. Aon many occasions@ when they lived in Fort Worth and physically abused Elva herself both
in Fort Worth and Mexico.  E.A. testified
that when they lived in Monterrey, Appellant hit her on several occasions and
physically abused R.A. 

A.A. also testified, without
objection, that she, E.A., and R.A. did not tell anyone that Appellant was
sexually abusing E.A. before the June 1, 1994 incident A[b]ecause we were scared of him. . . . He would hit us really bad, it
didn=t matter where.@

                                             Discussion








In his sole point, Appellant
argues that the trial court erred by admitting, over his rule 404 objection, the
extraneous-offense evidence that he beat Elva and the girls.  We review a trial court=s evidentiary
rulings for an abuse of discretion.  Sauceda
v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

Under rule 404(b), evidence of other crimes, wrongs, or bad
acts is inadmissible if it is offered to prove the character of a person in
order to show action in conformity therewith, but it may be admissible for
other purposes, such as proof of motive, opportunity, intent, absence of
mistake or accident, or to rebut a defensive theory.  Tex.
R.  Evid. 404(b).  Article 38.37 of the code of criminal
procedure provides that notwithstanding rule 404, evidence of other crimes,
wrongs, or bad acts committed by a defendant against a child who is the victim
of the alleged sexual assault Ashall be admitted
for its bearing on relevant matters, including: 
(1) the state of mind of the defendant and the child; and (2) the
previous and subsequent relationship between the defendant and the child.@  Tex.
Code  Crim. Proc. Ann. art. 38.37
(Vernon Supp. 2006); Jones v. State, 119 S.W.3d
412, 420 (Tex. App.CFort Worth 2003, no pet.).








We first consider Elva and
E.A.=s testimony that Appellant physically abused E.A. in Fort Worth and
Mexico.  E.A. was the victim of the
alleged sexual assault, and this testimony was relevant to the previous and
subsequent relationship between Appellant and E.A.  Therefore, this testimony was admissible
under article 38.37 notwithstanding rule 404, and the trial court did not err
by admitting the testimony over Appellant=s rule 404 objection.  See
Tex. Code Crim. Proc. Ann. art.
38.37.

Next, we consider the
testimony concerning Appellant=s physical abuse of Elva when they lived in Fort Worth.  An extraneous offense is admissible to
explain why a victim of sexual assault did not make a prompt outcry.  Wilson v. State, 90 S.W.3d 391, 394
(Tex. App.CDallas 2002,
pet. ref=d) (holding testimony that defendant assaulted victim=s mother was admissible to explain delayed outcry) (citing Brown v.
State, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983)).  Here, E.A. testified that Appellant assaulted
her for two years before she told her mother, and A.A. testified that she
learned Appellant was sexually abusing E.A. six months before she told her
mother.  Thus, the testimony regarding
Appellant=s physical
abuse of Elva before the June 1, 1994 incident is admissible to explain why
E.A. did not make a prompt outcry with regard to the earlier instances of
sexual abuse.








Finally, we consider the
testimony that Appellant physically abused Elva and R.A. when they lived in
Mexico.  Because this abuse occurred
after E.A. told her mother about the sexual assault, it is not admissible to
explain the delay in her outcry.  But it
does explain why Elva and her daughters went to Mexico with Appellant and
continued to live with him after reporting his sexual abuse of E.A. to the
policeCcircumstances which otherwise might undermine Elva=s, E.A.=s, and A.A.=s credibility.  It also explains
why Elva ultimately left Appellant, divorced him, and returned to the United
States.  Under these circumstances, we
cannot say that the trial court=s decision to admit this evidence is so clearly wrong that it lies
outside the zone of reasonable disagreement; thus, the trial court did not
abuse its discretion by overruling Appellant=s rule 404 objection.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g). 

We overrule Appellant=s sole point and affirm the trial court=s judgments.

PER CURIAM

 

PANEL F:    GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
May 10, 2007

 











[1]See Tex. R. App. P. 47.4.