**AFFIRM; Opinion June 11, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00341-CR**

**HARLEN ARTHUR ECKISS II, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F09-33276-N**

## OPINION

Before Justices Francis, Lang, and Evans
Opinion by Justice Evans

Harlen Arthur Eckiss II was convicted by a jury of felony driving while intoxicated. In four points of error, he complains the trial court erred in admitting his toxicology report and a police report into evidence and in permitting certain testimony by the arresting officer. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

When Irving police officer Kevin Palms first spotted appellant one morning around 12:30 a.m., he was standing on the side of a highway inside the passenger door of his pickup truck. The truck's lights were on, and appellant appeared to Palms to be urinating or vomiting. Palms, who had been traveling in the opposite direction of appellant's truck, turned his squad car around and headed in appellant's direction. Appellant pulled onto the highway without signaling his intent to do so, then he sped away. Palms testified that he had to travel eighty miles per hour to

keep pace with appellant. Eventually, Palms activated his lights and appellant pulled over in the parking lot of a closed gas station.

Palms was able to conduct only two field sobriety tests on appellant due to windy weather. Appellant said the alphabet two times; the first time, Palms heard appellant substitute the letter B for the letter V, but the second time appellant said the alphabet correctly. Appellant failed the horizontal gaze nystagmus test, showing six out of a possible six clues of intoxication. Palms also noticed that appellant smelled strongly of alcohol and had glassy eyes. When Palms asked if he had been drinking, appellant said he had drunk four twenty-four ounce beers (ninety-six fluid ounces). Palms arrested appellant and asked him to submit to a breath test, which appellant refused. Upon arrest, appellant gave his height as six feet zero inches and weight as 170 pounds.

After he arrested appellant, Palms searched appellant's truck. He found five open containers of Smirnoff Ice and poured out their remaining contents. He later discovered that appellant had prior DWI convictions. As a result, Palms obtained a warrant to take appellant's blood and transported him from the jail to a local hospital for the blood draw. He then transported the collected blood to Parkland Hospital for testing. The ethanol concentration of appellant's blood at the time it was drawn, approximately two hours and twenty minutes after appellant's arrest, was .12 grams of ethanol per 100 millimeters of blood. In Palms's opinion, due to appellant's ingestion of alcohol, he did not have the normal use of his mental or physical faculties at the time of his arrest and was unable to safely operate a motor vehicle.

The forensic toxicologist who testified about the blood testing for the State admitted on cross-examination that it was possible to imagine a scenario where an individual's blood alcohol level could have risen from below the legal limit of .08 to .12 in a span of two hours and twenty minutes. She explained, however, that for that scenario to operate in the case of someone

appellant's size, the drinker would have between 2.6 and 5.7 unabsorbed alcoholic drinks in his stomach at the time he was stopped.

## ANALYSIS

### I. Predicate for the Blood Draw

In his first point of error, appellant complains the trial court erred in admitting into evidence the toxicology report showing his blood alcohol level because the State failed to establish the "proper predicate" for the blood draw. Testimony at trial showed that not only did the nurse who took appellant's blood invert the blood vials several times to mix the blood with the anti-coagulant and preservative materials inside the vials, but Palms did so as well. Palms testified that he always inverts the vials several times after receiving a blood specimen to insure that the blood has been properly mixed.

At the time the State attempted to offer the toxicology report into evidence, appellant objected that there had been an "improper predicate drawn as to the gathering of this blood." Defense counsel argued that the State did not follow the mandates of the search warrant in the case, which authorized Palms to have a qualified person obtain appellant's blood "in accordance with accepted medical procedure." Appellant now argues, as he did at trial, that Palms's actions in inverting the vials himself inserted an unqualified individual in the blood draw process. He contends that Palms's actions exceeded the scope of the warrant.

A search is unreasonable and violates the protections of the Fourth Amendment if it exceeds the scope of the warrant authorizing it. U.S. CONST. amend. IV; *Long v. State,* 532 S.W.2d 591, 596 (Tex. Crim. App. 1975). The warrant in this case authorized the retrieval of appellant's blood by an authorized medical professional. Such retrieval occurred and was complete by the time Palms received the vials for transfer to Parkland Hospital. Palms's actions following the gathering of the blood sample are not germane to whether he exceeded the scope of

–3–

the warrant authorizing the blood draw itself. We therefore overrule appellant's first point of error.

## II.  Police Report Admitted Into Evidence

In his second point of error, appellant complains that the trial court, over his hearsay objection, admitted into evidence Palms's police report. The State concedes that the trial court violated rule of evidence 803(8)(B) in admitting the report but alleges that appellant was not harmed by the admission. We agree.

Under rule of appellate procedure 44.2, we must disregard all non-constitutional error unless it affected the appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). The single page of the police report admitted into evidence here reveals nothing but the fact that appellant refused to give a breath sample. Because this same evidence was elicited from Palms himself without objection, appellant could not have been harmed by the report's admission into evidence. *See Bourque v. State*, 156 S.W.3d 675, 677 (Tex. App.—Dallas 2005, pet. ref'd). We overrule appellant's second point of error.

## III.  Allowing Expert Testimony

In his third point of error, appellant contends the trial court erred in allowing the State to question Palms about circumstances that can affect a blood specimen. While Palms was testifying, the prosecutor asked him about witnessing the blood draw and if anything "went wrong" with the blood draw, to the best of Palms's knowledge. Palms said that nothing had gone wrong. The prosecutor then asked if Palms would have noted in his police report if anything had gone wrong. Palms replied yes, but clarified that "[i]t depends on what you mean by go wrong." The prosecutor then specified that he intended the question to apply to anything "that might affect the specimen or its validity." Appellant objected on the basis of relevance and

noted that Palms was not a medical expert and so could not speak to what might affect the specimen. The trial court overruled the objections.

Palms then testified, "Sure, just—I mean, if you're talking about just having to fight somebody or just whatever. It just depends on what you mean by go wrong." When the prosecutor specified "if he bled out" or the "vial fell" or things of that nature, Palms stated, "Absolutely. There were occasions when we would use a new vial, things of that nature. Yes, absolutely." He testified that in appellant's case two vials were taken and labeled in his presence.

Appellant argues that the trial court erred in permitting the testimony because Palms was never established under rule of evidence 702 as a medical expert who could testify about circumstances that would affect a blood specimen. Regardless of the questions asked, however, Palms never gave answers that required any medical expertise. His responses pertained to circumstances such as having to "fight" an accused or vials being damaged. This amounted to testimony by a lay witness regarding what he had personally observed. Appellant was not harmed, therefore, because Palms did not give medical expert testimony, regardless of whether the trial erred in overruling the objection. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's third point of error.

## IV. Officer's Testimony About the Change in Law

In his final point of error, appellant complains that Palms was permitted to testify about the change in Texas law requiring a person arrested for DWI to give a blood sample. During the State's opening argument, the prosecutor stated, without objection,

> Today if you are charged with a DWI with two priors, it is mandatory that blood can be drawn. However, back in 2009 the law was different. We had to get a search warrant. We had to do a warrant, we have to get an affidavit, and you have to find a judge to sign it to approve that withdrawal. You don't need consent. There was a law back then. So the officer had to get a warrant.

Later, during Palms's testimony, he discussed why he got a warrant to collect appellant's blood,

> Basically the way I do it is, if I arrest somebody for DWI and they refuse my sample, then—well, now more so because the law changed—I run them on the computer before I go to the jail. Because if it's mandatory, I can go straight to a hospital.
>
> At that time warrants were kind of moot as far as DWI goes. So we were only getting warrants as far as DWI goes. So we were only getting warrants on people that totally refused to do any of those sobriety tests or if it was a felony situation. So I ran his from the history to see if that were the case, which it was; so I then I applied for a warrant.

Appellant did not object to this testimony.

Later in Palms's testimony, the prosecutor asked Palms to explain to the jury how the law pertaining to collection of blood evidence at the time of appellant's arrest differed from the current law. Appellant objected on the basis of relevance and Palms's lack of expert status on the matter, but the trial court overruled the objections. Palms then testified,

> Prior to September of 2009, you could only get a mandatory blood sample if a person was killed because of a drunk driver or if a person had serious bodily injury because of a drunk driver.
>
> After September 2009 up to now, now [sic] you can get a mandatory blood specimen if a person is killed by a drunk driver, if a person has serious bodily injury, if a person has just injury and they're transported to the hospital for treatment, if it's a DWI third or more, if it's a DWI with a child, or in their criminal history they have a conviction for . . . manslaughter or intoxication assault or DWI with a child.

Appellant complains that the above testimony was not relevant to his case. Regardless of whether the trial court erred in allowing it, however, appellant cannot show how he was harmed. Improper admission of evidence constitutes non-constitutional error that we must disregard unless the error affected an appellant's substantial rights. *See Wilson v. State*, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.). An error affects a substantial right when it has a substantial and injurious effect or influence on determining the jury's verdict. *See id.* Appellant argues that he was harmed by the testimony because it "highlighted a procedure that was inapplicable to Appellant's case." Any error in doing so could not have had a substantial and

–6–

injurious effect or influence on determining the jury's verdict. Moreover, the jury had already heard about the differences in the law through argument and testimony that was received by the jury without objection. Because appellant was not harmed by any error in permitting the testimony, we overrule appellant's fourth point of error.

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120341F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HARLEN ARTHUR ECKISS II, Appellant

No. 05-12-00341-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F09-33276-N.
Opinion delivered by Justice Evans.
Justices Francis and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of June, 2013.

/David Evans/
DAVID EVANS
JUSTICE