**AFFIRM; and Opinion Filed August 10, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00973-CR

### ISIDRO REYNA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 204th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1162933-Q

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Brown

Isidro Reyna appeals his conviction for continuous sexual abuse of M.A., a child younger than fourteen years of age. After finding appellant guilty of the charged offense, the jury assessed punishment at twenty-eight years' confinement. In a single issue, appellant claims the trial court abused its discretion by allowing certain evidence. We affirm.

## BACKGROUND

Twelve-year-old M.A. testified she lived with her mother, Julia, several siblings, and Julia's husband, appellant.[1] When M.A.'s friend, F.S., said her uncle was hurting her by trying to touch and kiss her, M.A. revealed that appellant had been doing similar things to M.A.

---

[1] Julia is M.A.'s biological aunt.

According to M.A., when she was seven or eight years old, appellant came up behind her, reached under her shirt, and touched her breasts while she was playing video games on the couch. She told the jury she was about nine years old when he touched her "middle part" with his fingers. She described her "middle part" as where she pees. She said it felt "weird" and hurt when he did it. On another occasion, appellant called from the bathroom and asked her to bring him a towel. When he opened the bathroom door, he did not have any clothes on. He took her hand, "put it on his middle part," and made her "move it up and down." According to M.A., the "white stuff that came out" of his middle part ended up on her face, near her mouth. M.A. could not remember how old she was at that time. She also told the jury that one night, while she was asleep, appellant came in her bedroom and tried to "put his middle part in my butt, but he couldn't." The "white stuff" went on her shorts, underwear, and bed covers. She threw away her underwear the next morning but could not remember what she did with her shorts. On another occasion, appellant tried to put his middle part in her mouth while she was sleeping.

Christine Mack, a forensic interviewer with the Dallas Children's Advocacy Center, was the outcry witness. She began her testimony by detailing her educational background and training; she then described for the jury how a forensic interview is conducted and what types of things the interviewer looks for. She discussed, at length, what red flags are, describing them as indicators of whether something has in fact occurred or whether the child is being told to say it occurred. She indicated red flags would also show whether a child was holding back information or giving full disclosure.

When Mack interviewed M.A., the child made "multiple disclosures of abuse." Mack, who speaks Spanish fluently, interviewed M.A. in Spanish and detailed the incidents for the jury. According to Mack, appellant touched M.A.'s breasts on at least two separate occasions: once by taking her shirt off and the other by placing his hands underneath her shirt. M.A.

demonstrated the rubbing motion he used when touching her breasts. Another time, appellant came up behind her, pulled her pants down "just a little bit," stretched her underwear out, and touched her vagina with his finger. The next incident occurred when M.A. was sleeping; appellant opened her mouth and, grabbing his penis, put it inside her mouth. He then moved his hands forward and backwards until she felt what she called "baba" in her mouth. Mack described "baba" as Spanish for "spit, saliva, slime, [or] something of that nature." M.A. swallowed the "baba," and appellant stopped. Another time, M.A. was sleeping, and appellant came into her room. He pulled down her shorts and underwear, then touched her butt with his penis. M.A. said it "felt like a stick" and she could "feel the baba on her butt." The following morning, she woke and saw the "white crusty stuff" on her shorts and underwear. She threw her shorts in the wash, threw her underwear out, and put on clean clothes. Finally, M.A. told Mack that appellant showed her iPhone videos of naked adults kissing on a bed, telling her that was what "he wanted to do to her."

When asked if she determined whether M.A.'s testimony had red flags, appellant objected on the grounds Mack was being asked to judge whether M.A. was telling the truth and that it was inappropriate. The trial court overruled appellant's objection, after which Mack stated she did not "determine any red flags. And just for clarification, our red flags, we do not make an opinion on the case." When asked to elaborate, Mack said, "[w]e are never going to tell a police officer we think the child is telling the truth or the child's lying."

Sandra Onyinanya is a pediatric nurse practitioner and the sexual assault nurse examiner (SANE) at the REACH Clinic at Children's Medical Center Dallas. She examined M.A. but found no signs of physical trauma. Onyinanya said this was quite common and that 85-95% of the SANE exams were normal. This is due, in large part, to the type of tissue in the vaginal and anal areas and its ability to heal quickly. Onyinanya also noted M.A.'s mother was unsure of

–3–

what had happened and whether to believe M.A. Specifically, her mother said M.A.'s friend, F.S., reported she was sexually abused by her uncle and got gifts from CPS, and that M.A. "now wants the same thing." Onyinanya told her that the majority of the time, "children typically [do not] make up stories about sexual abuse." She further noted that if a child is able to give the detail M.A. did in her forensic interview, "then that was beyond makeup."

At the time of M.A.'s outcry, Detective Daniel Greene was assigned to the Child Abuse Division of the Dallas Police Department and investigated her claims. He requested a forensic interview for M.A. and was present when Mack interviewed her. According to Greene, M.A. said her uncle abused her. When Greene was asked whether he observed any "red flags" in the course of M.A.'s interview, appellant objected that such testimony was an attempt to bolster M.A.'s credibility. The trial court overruled the objection, and Greene testified he did not observe any red flags. The State then asked Greene to define what a red flag was, and appellant again objected and asked for a running objection to "red flag testimony." The trial court overruled the objection and granted appellant a running objection as requested. Greene described a "red flag" as "a statement made by the child or something in the case which would cause us to have concern for the credibility of the child." He then gave several generic examples, including a child using vocabulary inconsistent with the child's age. Greene said that, in light of M.A.'s statements, he obtained a warrant for appellant's arrest, as well as a search warrant for the family home.

Greene arrested appellant and read him his *Miranda* rights. He then interviewed appellant, who initially denied M.A.'s allegations, but later admitted touching M.A.'s "vagina over her clothing at least five times." He also admitted it happened over a period of several months and that "[m]ost of the time it was over her clothes." When Greene asked appellant if M.A. initiated the conduct, appellant responded, "No. Never can a girl that age start something

–4–

like that." Appellant also admitted having an obsession with pornography but said he did not show pornographic materials to M.A. He also denied any other sexual abuse occurred and specifically denied penetrating M.A. or putting his penis in her mouth. Greene said that, in his experience with people suspected of sexual abuse, "they hold back" information and "minimize their culpability." Greene also told the jury he seized the bed covers on M.A.'s bed as well as appellant's iPhone, but no physical evidence was found.

After hearing this and other evidence, the jury found appellant guilty of continuous sexual abuse of a child younger than fourteen years of age. This appeal followed.

## ADMISSION OF EVIDENCE

In his sole issue, appellant claims the trial court erred by allowing Mack and Greene to testify whether they detected "red flags" during M.A.'s interview which, he contends, commented on M.A.'s credibility. He claims his substantial rights were affected and we must reverse his conviction.

Although we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard, *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010), we conclude we need not address whether the admission of the complained of testimony in this case was an abuse of discretion because, even if it were, appellant has not shown reversible error. The wrongful admission of evidence constitutes non-constitutional error, and we must disregard it unless it affected appellant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affected a substantial right "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Despite non-constitutional error, we affirm a criminal conviction if, after examining the record as a whole, we are left with the fair assurance that the error did not influence the jury or influenced the jury only slightly. *Morales v.*

*State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We analyze the entire record to determine if the trial court's error had no or only a slight effect on the jury's decision. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Wilson v. State*, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.). We consider all the evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence, as well as the trial court's instructions to the jury and the parties' closing arguments, to determine if the error substantially affected appellant's rights. *Wilson*, 90 S.W.3d at 393.

The record reflects M.A. testified at trial and gave specific, sensory detail that, beginning when she was eight years old and ending several months later when she was nine years old, appellant touched her breasts and vagina on several occasions, placed his penis in her mouth and on her butt, and that on one occasion, he made her grab his penis until he ejaculated. Appellant admitted he touched M.A.'s vagina at least five times and, although he initially said all the touching was "over her clothes," he later said it was over her clothes "most of the time." During closing arguments, the State focused on M.A.'s in-court statement as well as appellant's video-taped statement to Greene. No mention was made of red flags or whether or not Greene or Mack thought M.A. was telling the truth.

Considering the record as a whole, including all the evidence presented, the nature of the evidence supporting the verdict, the character of the asserted error and its relationship to other evidence, the instructions of the court, and closing argument, we are left with the fair assurance that the trial court's error, if any, did not influence the jury or influenced the jury only slightly. *See id.* We therefore disregard the trial court's non-constitutional error, if any, as harmless. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's sole issue.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

140973F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ISIDRO REYNA, Appellant

No. 05-14-00973-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-62933-Q.
Opinion delivered by Justice Brown, Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 10th day of August, 2015.