**Affirmed and Opinion Filed June 28, 2016**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-15-01039-CR**

**GIOVANNI ROMERO MOJICA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 11**
**Dallas County, Texas**
**Trial Court Cause No. MA15-57202-N**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and O'Neill[1]
Opinion by Justice Bridges

Giovanni Romero Mojica appeals his assault conviction with a finding of family violence. A jury convicted appellant, and the trial court sentenced him to 135 days' confinement. In two points of error, appellant complains the trial court erred in denying his two motions for mistrial. We affirm the trial court's judgment.

In June 2015, appellant was charged by information with the offense "assault causes bodily injury family violence." At appellant's subsequent trial before a jury, Leslie Salmeron testified that, on June 22, 2015 she had been "together" with appellant for eight years, and they had two daughters. The previous day had been Father's Day, and appellant and Salmarone attended a family reunion where appellant drank "the whole time." Salmarone drove appellant

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

home, arriving at approximately 3:00 a.m. As had been previously agreed, Salmarone called her aunt to let her know they had made it home safely. Appellant took the phone away from Salmarone and accused her of cheating on him. Salmarone tried to explain, but appellant threw the phone at the wall and then picked it up. Appellant noticed a text message Salmarone had sent earlier to one of her uncles asking if he would be at the family reunion. Appellant interpreted the text message as meaning Salmarone was going to meet someone else outside while appellant was sleeping. Appellant threw the phone away again and started hitting Salmarone on her shoulders, in her face, and by her ear. Appellant cornered Salmarone between a window and a couch, and Salmarone try to cover her head as appellant continued to grab her and hit her.

The prosecutor asked Salmarone if there was "any way that [appellant] didn't mean to" hit her and if appellant meant to hit her. Salmarone replied that appellant was drunk and "alcohol – you're not thinking clear, you know." Salmeron then volunteered the following: "I would say, you know – what I could say it's – he's a pretty violent person . . . ." Defense counsel immediately objected, and the jury was removed from the courtroom. Outside the presence of the jury, defense counsel objected to "impermissible character evidence, and also the State violating the motion in limine to prevent the witness from testifying about prior acts of violence or continuing acts of violence, et cetera." Following admonishments from the trial court and the prosecutor that Salmeron could not say appellant was a violent person or had extremely bad temper, defense counsel moved for mistrial. The trial court denied the motion.

Salmeron continued her testimony, describing how her daughters were awakened by her screams and came out of their room. Although the girls were watching, appellant continued to hit Salmeron. Appellant grabbed Salmeron by her ponytail and hit her head against the wall, making a "hole on the wall." Appellant "kind of stopped" and told Salmeron that he loved her

and that he wasn't "thinking." Salmeron said "that was enough" and remained silent while appellant continued to say he loved her. Salmeron attempted to get her daughters to calm down and go back to sleep in their room. Appellant came in the room, grabbed Salmeron, and said he was sorry. Appellant locked Salmeron in the room and lay down on the floor outside to prevent Salmeron from getting out or trying to get help. Salmeron waited until appellant fell asleep and escaped the room through a bathroom. Salmeron was able to reassemble her cell phone, but it was damaged and only allowed Salmeron to send two texts to her mother: one asking if her mother was awake and another saying she needed to talk to her mother and "it was urgent." Salmeron fell asleep for a while. Her phone rang at 8:00 a.m., but she was unable to answer the call. Salmeron's mother and father came over to the house because they had gotten her texts. After talking with Salmeron, her mother called police.

On cross-examination, defense counsel questioned Salmeron about appellant's drinking. Salmeron testified appellant "had been drinking constantly" on the night of the assault. Defense counsel asked if it was fair to say Salmeron "was not terribly excited about remaining with [appellant]." Salmeron answered she was with appellant because she loved him. Defense counsel did not ask another question, and Salmeron continued: "I lived with him eight years. I suffered a whole bunch of things. I've lived family violence pretty much, you know . . . ." Defense Counsel objected and asked to approach the bench. Following an off-the-record conversation at the bench, defense counsel said she wanted to talk about appellant's alcohol abuse and Salmeron's feelings about it. Salmeron testified having two daughters did not change appellant's drinking, and she tried to help him but she "realized maybe [appellant] lost hope." Again, defense counsel did not ask a question following this testimony and only responded "Okay." Salmeron continued:

> And having my kids to see a whole lot of things, you know, that just – it's not
> good for me and it's not good for my kids, you know, to see how he acts and what

–3–

he does to me, it – for me it hurts, you know, to see my kids watching him, you know, how – how he drinks and when he gets abusive with me.

Defense counsel again objected and asked to approach the bench. Outside the presence of the jury, defense counsel asked for a mistrial and argued Salmeron was testifying to extraneous acts during her eight-year relationship with appellant. The trial court ruled as follows:

Okay. I'm gonna deny your mistrial basically – based on the fact that I believe your questions are what elicited that response from her on both occasions. And I would just caution you if you proceed with this line of questioning to be as clear as possible and not allow her – I think the last question – the last statement came out because she was allowed to just continue to ramble off of one question that you asked her, so.

After admonishing Salmeron to only talk about "just that incident," the trial court advised defense counsel that "the issue" they were having was that defense counsel was asking Salmeron "things in the past that are very related – closely related to the prior abusive acts in the past." The trial proceeded, and the jury ultimately found appellant guilty of assault with a finding of family violence. This appeal followed.

In two issues, appellant argues the trial court erred in denying his two motions for mistrial. We note that, in both complained-of instances, appellant did not ask for an instruction to disregard but immediately asked for a mistrial. When a party's first action is to move for mistrial, as this appellant's was, the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial; in other words, an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request these lesser remedies in the trial court. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. *Id.*

Generally, a prompt instruction to disregard will cure a witness's inadvertent reference to an extraneous offense. *Wilson v. State*, 90 S.W.3d 391, 395 (Tex. App.—Dallas 2002, no pet.) (citing *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)). Unless the extraneous offense is so calculated to inflame the minds of a jury or is of such a nature as to suggest the impossibility of withdrawing the impression produced, an instruction to disregard can cure any improper impression. *Id.* (citing *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992)).

Here, appellant moved for a mistrial after Salmarone said appellant was "a pretty violent person" and again after Salmarone said she had "lived family violence." There is an inference to be made that appellant was "pretty violent" *to her* and Salmarone "lived family violence" during the eight years she lived with appellant. However, Salmarone did not refer to any extraneous acts of violence or explicitly link appellant's violent nature to acts of violence against her or explicitly state she had "lived family violence" during the entire eight years she was with appellant. We conclude Salmarone's statements were not so calculated to inflame the minds of the jury or of such a nature as to suggest the impossibility of withdrawing the impression produced. *Id.* (citing *Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex. Crim. App. 1987)). Therefore, an instruction to disregard would have cured any improper impression left by Salmarone's statements. *See id.* Under these circumstances, the trial court did not err by denying appellant's two motions for mistrial. *See Young*, 137 S.W.3d at 70. We overrule appellant's first and second points of error.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

151039F.U05

–5–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GIOVANNI ROMERO MOJICA, Appellant

No. 05-15-01039-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 11, Dallas County, Texas
Trial Court Cause No. MA15-57202-N.
Opinion delivered by Justice Bridges.
Justices Evans and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 28, 2016.