

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00286-CR

RUPERT RAYMOND WORK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 21st District Court
Burleson County, Texas
Trial Court No. 14,992; Honorable Carson Campbell, Presiding

November 7, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Rupert Raymond Work, appeals from his conviction by jury of the lesser-included misdemeanor offense of assault causing bodily injury[1] and the court-imposed

---

[1] TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2019). An offense under this section is a Class A misdemeanor. *Id.* at § 22.01(b).

sentence of imprisonment for one year. Appellant challenges his conviction through two issues. We will affirm.[2]

## BACKGROUND

Appellant was charged with the third-degree felony offense of assault against a family member, Robin, by impeding the normal breathing or circulation of the blood by applying pressure to the throat or neck with his hand or hands.[3] The evidence at trial showed Appellant and Robin dated off and on for several years. The two had a child together and lived together while the child was young. At the time of the assault, the couple was not living together. That night, Appellant and Robin went to a bar. They then went to a second bar where they ran into two of Robin's cousins, Eddie and Susie. They arranged for the two couples to go back to Robin's house and then drive to a third bar together.

Appellant and Robin went to Robin's house first. While there, Appellant decided he did not want to go to the bar with Eddie and Susie. Appellant and Robin argued. Robin told the jury Appellant kicked and pushed her onto the concrete steps of her house. She attempted to use her phone, but she and Appellant struggled over it. Robin testified Appellant "grabbed me by the throat, threw me into the side of the trailer house." She said Appellant had "his knee on my neck and I can feel the pressure and I realize that if I

---

[2] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2019).

don't let go of this phone, I'm going to die." As soon as she let go of the phone, Appellant picked it up, threw it to the ground and smashed it. He then left.

Robin went to the hospital where she spoke with medical personnel and a police officer. The police officer also interviewed her the following day. Robin related details in the second interview that she did not include in the first. Photographs of Robin's injuries were admitted into evidence.

### ISSUE ONE—EXCLUSION OF OPINION TESTIMONY

Appellant's first issue contends the trial court erred when it excluded opinion testimony from a witness the defense proffered as an expert in police investigations. As grounds for his complaint, Appellant argues that because there were no other witnesses to the acts alleged by Robin, her credibility was a core issue at trial. According to Appellant, the inconsistencies in her claims and the conflicts between her testimony and written records impaired her credibility. Therefore, according to Appellant's theory of the case, the thoroughness of the investigation was a relevant issue at trial. The State called the investigating officer at trial. That officer testified to the process he used in the investigation. Cross-examination revealed that the officer did not interview anyone other than Robin, did not look at medical records, and did not go to Robin's home. As such, Appellant asserts, he should have been able to present the testimony of a private investigator about the necessary steps in a proper investigation. The State argues the witness was not qualified to provide an expert opinion because his qualifications did not fit the subject matter on which he was to testify and the subject matter, i.e., the conduct of this particular police investigation, was an improper area for expert testimony.

An appellate court reviews the decision to admit or exclude expert testimony for an abuse of discretion. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Therefore, we will defer to the trial court's decision as long as there is evidence in the record to support the trial court's ruling. *Osbourn v. State,* 92 S.W.3d 531, 537-38 (Tex. Crim. App. 2002) (citations omitted). The court's decision will be upheld if the decision was correct on any theory of law applicable to the case. *Id.* (citations omitted).

The Texas Rules of Evidence set forth three distinct conditions regarding admissibility of expert testimony. *Vela v. State,* 209 S.W.3d 128, 130-31 (Tex. Crim. App. 2006). First, Rule 104(a) requires that "[p]reliminary questions concerning the qualification of a person to be a witness . . . be determined by the court . . . ." *Id.* (citing TEX. R. EVID. 104(a)). Second, Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *Id.* (citing TEX. R. EVID. 702). And third, Rules 401 and 402 render testimony admissible only if it "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (citing TEX. R. EVID. 401, 402). These rules require a trial judge to make three separate inquiries, which must all be met before admitting expert testimony: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case.

These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela*, 209 S.W.3d at 131. We will address the third condition.

Here, Appellant sought admission of a private investigator's testimony. During counsel's questioning of the witness, he asked:

Defense:    When you are going to investigate a possible crime [--] and you are talking to either witnesses or an alleged victim, what steps do you take to ensure that is a proper investigation?

Prosecutor: I object, Your Honor. He's asking him a question as an expert. He stated that he's not an expert, and I would also object to the field of study as not being specialized or scientific.

The prosecutor then argued:

just to respond to that, his qualifications as an investigator himself I'm not attacking; but for him to render an opinion on someone else's investigation, I would attack that as both not being a proper field to call an expert in basic criminal investigations; it does not require scientific or specialized knowledge that would aid the jury in making their conclusions but also that it can't be a field that he has expertise in on another person's investigation of being proper.

Defense counsel countered this argument by contending he did not ask the witness to provide an opinion on this particular investigation; rather, he simply asked him to opine on the steps necessary to ensure a proper investigation in a case of this nature. The trial court sustained the State's objection.

Appellant offered the testimony of the investigator to support his theory that while an altercation between the couple occurred—he did not strangle Robin. He spent a great deal of time at trial exposing the inconsistencies in Robin's story and in attempting to

negate evidence of strangulation. However, Appellant did not show the private investigator's testimony was relevant.

To do so, the expert was required to "make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony." *Jordan v. State,* 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). In Appellant's offer of proof, the investigator was asked if he thought the investigation was properly conducted and also whether strangulation was likely in this case. The investigator said he did not believe the investigation was sufficiently thorough and believed the direct questions asked to Robin about being choked were improper in an investigation such as this. He also opined strangulation was not likely in this case.

The investigator did not show how his opinions would be helpful to the jury nor did he show how his testimony would have assisted the trier of fact in determining a fact in issue. Expert testimony is admissible only if it "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Vela,* S.W.3d at 131. The jury was the sole judge of the facts, the credibility of witnesses and the weight to be given to the testimony. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State,* 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). The investigator's opinion was not relevant to whether the jury believed Robin. It was solely within the jury's province to sift through the versions of the events as described by Robin and decide what to believe. *Chambers,* 805 S.W.2d at 461; *Wise,* 364 S.W.3d at 903. Expert testimony was not relevant to that determination. *See Salazar v. State,* 127 S.W.3d 355, 360 (Tex. App.—Houston [14th

6

Dist.] 2004, no pet.) (holding testimony was not relevant if it is "explicitly offered solely as educational material for the jury to use in assessing the complainant's credibility").

The same is true regarding the investigator's opinion that Robin was not strangled. The investigator did not explain how his opinion about strangulation was relevant here. He had no expertise in strangulation and did not speak with Robin. Nonetheless, his opinion was offered to rebut Robin's testimony that Appellant did strangle her. This is, again, an issue of credibility of witnesses and evaluation of the evidence, something an expert opinion cannot assist the jury in doing. *See Salazar,* 127 S.W.3d at 360 (citing *Jordan,* 928 S.W.2d at 555 (concluding testimony must be specifically tied to the facts of the case and not simply an academic discussion on a field of study)).

Moreover, even if the trial court did err in excluding the investigator's testimony, any error was harmless. Under Rule 44.2(b), we must disregard any non-constitutional error that does not affect an appellant's substantial rights. TEX. R. APP. P. 44.2(b). Substantial rights are not affected if, after examining the record as a whole, we have fair assurance the error did not influence the jury or had but a slight effect. *Fuentes v. State,* No. 07-17-00104-CR, 2019 Tex. App. LEXIS 926, at *19 (Tex. App.—Amarillo Feb. 8, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Petetan v. State,* No. AP-77,038, 2017 Tex. Crim. App. LEXIS 286, 2017 WL 915530, at *32 (Tex. Crim. App. Mar. 8, 2017)). In considering the potential to harm, the "focus is not on whether the outcome of the trial was proper despite the error, but on whether the error had a substantial or injurious effect or influence on the jury's verdict. A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error." *Barshaw,* 342 S.W.3d at 93-

94. "'Grave doubt' means that in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* (internal citations omitted). Applying that standard here, we find any error in excluding the proffered testimony did not influence the jury or had only a slight effect. *Id.* (citation omitted).

As noted, Appellant spent a significant amount of time at trial challenging the strangulation allegation asserted by the State. Part of the investigator's proffered testimony also challenged that allegation as follows:

Defense:       Okay. And based on what you have seen and heard in reviewing this case, does it appear to you that there is a likely strangulation here?

Investigator:  No.

Defense:       Are you able to tell what exactly happened here based on reviewing the evidence?

Investigator:  No.

Defense:       And in your opinion, do you think that the investigation of this case based on your review of the evidence was conducted properly?

Investigator:  I think it was a rush to judgment.

The jury found Appellant guilty of the lesser-included misdemeanor offense of assault with bodily injury, acquitting him of the greater charge of felony assault against a family member by impeding the normal breathing or circulation of the blood by applying pressure to the throat or neck with his hand or hands. The jury's verdict shows Appellant was not harmed by the trial court's exclusion of the investigator's testimony as that testimony was intended to refute the strangulation allegation which was ultimately rejected by the jury

8

without that testimony. Because nothing in the investigator's testimony would have negated any element of the offense for which Appellant was convicted, therefore, Appellant suffered no harm. Accordingly, we overrule Appellant's first issue.

### ISSUE TWO—MISTRIAL

Through his second issue, Appellant argues the trial court erred in denying his request for a mistrial. His request occurred after the following exchange during direct examination of Robin:

| | |
|---|---|
| State: | Did you and Mr. Work ever marry? |
| Robin: | No, ma'am. |
| State: | Did you ever move in together? |
| Robin: | During my pregnancy, Rupert did live with me. |
| State: | And so he moved into your home? |
| Robin: | Yes, ma'am. |
| State: | How long did he live with you? |
| Robin: | Six months after I had my child. |
| State: | That's when he moved out? |
| Robin: | That's when he moved out. |
| State: | Okay. So just to clarify, he moved in while you were pregnant, stayed there until you had [your child], and then [your child] got to about six months -- |
| Robin: | And there was another altercation prior – |
| Defense: | Judge, I'm going to object. |
| Robin: | -- and that's when it was -- |
| The Court: | I'll sustain the objection. Listen to the question and just answer the question, please. |

Defense:     And, Judge, I'd ask to have any remarks disregarded -- if you can have the jury disregard –

The Court:   Any remarks made to the last question that weren't in direct response to that question, please disregard, ladies and gentlemen of the jury.

Defense:     I'd ask for a mistrial, Judge.

The Court:   That's denied.

We review denial of a motion for mistrial under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (citation omitted). A mistrial is "a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case*. Id.* (citation omitted). Furthermore, on appeal, we generally presume the jury follows the trial court's instructions, including an instruction to disregard, in the manner presented. *See Casanova v. State*, 383 S.W.3d 530, 543 & n.56 (Tex. Crim. App. 2012) (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (both noting general presumption). While the presumption is refutable, an appellant must be able to point to evidence contained in the record to prove that the jury failed to follow the trial court's instruction. *Thrift,* 176 S.W.3d at 224.

In most cases, a prompt instruction to disregard will cure a witness's inadvertent reference to an extraneous offense. *Wilson v. State,* 90 S.W.3d 391, 395 (Tex. App.— Dallas 2002, no pet.) (citing *Ovalle v. State,* 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)). Unless the extraneous offense is so calculated to inflame the minds of a jury or is of such

a nature as to suggest the impossibility of withdrawing the impression produced, an instruction to disregard can cure any improper impression. *Id.* (citing *Kemp v. State,* 846 S.W.2d 289, 308 (Tex. Crim. App. 1992)).

The State argues that Robin's reference to "another altercation" was not evidence of an extraneous offense. It was vague and could just as easily have been a reference to a verbal altercation. Furthermore, Robin did not identify Appellant as a person involved in that altercation. However, because that inference could be made, the State asserts that the trial court promptly and properly instructed the jury to disregard her remarks and this instruction cured any improper impression or effect of Robin's innocuous reference to an altercation. Furthermore, the State contends her reference was not so calculated to inflame the minds of the jury, nor was it of such a nature that it would suggest the impossibility of withdrawing the impression produced. *Wilson*, 90 S.W.3d at 395. We agree with the State and find the trial court did not err by denying Appellant's request for a mistrial. Accordingly, we overrule Appellant's second issue.

### CONCLUSION

We affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.

11