Elizabeth **VISCAINO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–14–00239–CR

Court of Appeals of Texas, El Paso.

February 24, 2017

Hon. Jaime Escuder, Alpine, TX, for Appellant

Hon. Rod Ponton, County Attorney, Presidio County, Marfa, TX, for Appellee

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

Appellant was charged with theft of more than $500 and less than $1,500. The jury returned a guilty verdict, imposed a fine, assessed restitution, and sentenced her to "probation of sentence for one year."

In two issues, she challenges the sufficiency of the evidence, prosecutorial misconduct, improper opinion testimony, and ineffective assistance of counsel. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Rosa Morales worked for the Presidio County tax office. At approximately 11:45 a.m. on July 21, 2011, Appellant came to the office with her daughter and her niece, bypassed the payment window, and greeted Morales at her desk. Morales spent ten or fifteen minutes assisting Appellant with a title transfer. A co-worker indicated that it was time to go to lunch and locked the office door. Appellant paid Morales for the registration.

Morales explained to the jury that when the cash register opens, she customarily places money she receives on top of it, closes the drawer, determines the amount of change due, opens the cash register

again, gives the correct change, puts the money paid away, and closes the drawer. After giving Appellant her change, Morales closed the drawer but left Appellant's money on top. She was on the telephone around 12:05 p.m. and left Appellant standing near the cash register. After she completed the call, Morales noticed that the money was missing but she could not remember whether she had put it in the drawer. She did not mention anything to Appellant at the time because she was not sure what had happened. Morales escorted Appellant out of the office between 12:06 and 12:15 p.m. because her co-worker was in a hurry to go to lunch. She did not check the register before leaving the office because she was running late and needed to return by 1:00. But she knew that if she were short any money at the end of the day, she was required to pay it herself so that all money received and reported during the day would be deposited. Consequently, Morales borrowed money from her son to make up the shortage. She then began giving money to her co-worker, Annabel Rodriguez, who acted as a treasurer so that Morales could prove to her supervisor, Norma Arroyo, that she was repaying the money herself.

When Morales reported the money stolen, Sheriff Danny Dominguez contacted Texas Ranger Jeffrey Vajdos to assist him as the matter was a potential public corruption case. Morales and Appellant became the focus of the investigation as they were the only persons who had the opportunity to commit the theft.

Morales gave a written statement on August 16, 2011, but Ranger Vajdos was not present. Noting that the statement lacked details, Vajdos decided to interview Morales himself. Despite his thorough and harsh one-hour interview, Morales adamantly denied any involvement in the theft, was consistent in her statements,

never wavered in her descriptions of what had occurred, and expressed remorse for violating office policies and allowing the theft to occur. Vajdos was not concerned that Morales did not look for the money in the register before leaving for lunch. He recalled that her lunch companion did not learn about the missing money until the following week. He thought it reasonable that Morales had not reported the money missing until later in the day after she had exercised due diligence. He did not believe Morales was motivated to commit theft because the tax office had a policy that would have required Morales to repay any missing sums and he was aware that Morales was paying back the money pursuant to the policy. He did find it odd that Rodriguez was collecting the money Morales was repaying but was not providing receipts to Morales or writing down the amounts paid. Instead, she simply noted the amount Morales owed. Vajdos did not obtain another statement from Morales, and could only speculate as to why Morales was repaying the county when she should have been repaying her son.

Ranger Vajdos and Sheriff Dominguez interviewed Appellant at her home in March 2012, and created an audio recording of the 27–minute interview. Appellant gave the officers the receipts she had received when she paid the $557.63 for the vehicle registrations. She explained that the following day, a tax employee contacted her to say that Morales had accused her of theft. Appellant had gone to the tax office to confront Morales but the issue was not resolved. At this stage of the investigation, Vajdos considered Appellant's explanations plausible.

Vajdos and Texas Department of Public Safety Trooper Gus Trevino conducted a second interview with Appellant on May 23, 2012. Appellant was not forcibly detained. Initially, Trevino did not ask for a

written statement because Appellant had denied her involvement in the theft. He testified that "it took an hour for her to want to admit 'Okay, I took the money, and I'll write a statement.'" Appellant spent approximately ten to fifteen minutes drafting her statement. Trevino testified that Appellant placed her initials next to the waiver of constitutional rights on her written statement, and was provided an opportunity to make changes. At trial, Appellant's statement was read into the record:

I don't know what happened. The only thing I can say is, I'm sorry. I'm willing to pay the money and clear up this issue. By accident—as an accident of the money, I don't remember what happened, if it was in the paperwork by accident and I took the money. The amount was $570.[00]. It was from the office of Rosa Morales.

Trevino denied that he forced Appellant to write a statement or instructed her regarding the contents, but he acknowledged that Appellant did not expressly state, "I took the money."

Appellant testified in her own defense. At approximately 11:45 a.m. on July 21, 2011, she went to the tax office accompanied by her daughter and her niece. She waited for Morales to finish assisting other customers, and when Morales summoned her to "[c]ome on back[,]" she entered and sat in Morales' desk area. She informed Morales that she was there to complete papers regarding a recreational vehicle. Morales finished a telephone call before assisting Appellant. She processed the transaction and told Appellant the fee would be $557.63. Appellant tendered either $570 or $580 and Morales placed the money on top of the cash register. She gave Appellant her change and a receipt for the payment, instructed Appellant to review everything for accuracy, and closed the cash register drawer. Appellant testified that she did not take the money, and did not see what Morales did with the money because she was quickly reviewing the paperwork to ensure no changes were necessary since Morales was in a hurry to leave for lunch. When Appellant informed Morales that the information was correct, Morales stated, "Okay. Well, I have to go. I'm running late." Morales then accompanied Appellant and the girls to the door, and they left. According to Appellant, Morales never mentioned the missing money.

The following day, another tax office employee, Alma Carrasco, called Appellant and told her that Morales alleged that the exact amount of money Appellant had paid was missing from the cash register drawer. Appellant said that was impossible because Morales had given her change and receipts. When Appellant asked why Morales had waited to tell her the money was missing, Carrasco replied that Morales wanted to see if Appellant had a conscience and would return it. Carrasco also suggested that one of the girls may have taken the money.

Appellant then went to the tax office, politely confronted Morales, and told her that she wanted to address her "face-to-face, completely honestly ... about what happened and to clear up the situation." Morales would not listen to her. Appellant introduced herself to Norma Arroyo and asked why she had not been stopped immediately regarding the missing money, to which Arroyo replied, "I don't know. All I know is that you stole the money. You took the money."

Appellant returned home and within an hour, Deputy Sheriff Marco Baeza took her written statement. Appellant explained that she did not understand why she was given change and a receipt and then was allowed to leave the tax office if something was wrong. Several months later, Ranger

Vajdos and Sheriff Dominguez came to her home for an interview. Appellant testified that when Trooper Trevino interrogated her, he treated her horribly, and alleged from the outset that he knew she was guilty and had taken the money. Appellant denied taking the money, but felt pressured because Vajdos continued asking her, "What are you waiting for? Sign it. Sign the statement." Appellant was crying when Vajdos told her, "You can ... put down that you took it, or you can ... write that you took it by mistake, that you took it in the paperwork[,]" and suggested many things that she should put in the statement. Appellant responded, "What could I put down? Nothing happened." She hesitated as she attempted to write her statement because she did not know what to write, but she knew Vajdos wanted her to write something. She alleged that Trevino had also suggested what she could write. Although she provided a statement in her own handwriting, she repeatedly claimed at trial that she was told what to write.

## SUFFICIENCY OF THE EVIDENCE

■ We begin with Appellant's second issue in which she challenges the sufficiency of the evidence to support her theft conviction. We address a challenge to the legal sufficiency of the evidence by considering all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We defer to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Isassi v.*

*State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010)(reviewing court does not reevaluate weight and credibility of evidence or substitute its judgment for that of fact finder). Because the jury is the sole judge of the weight and credibility of the evidence, we presume the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). Our task is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Isassi*, 330 S.W.3d at 638.

When conducting a sufficiency review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim. App. 2004).

■ Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Byrd v. State*, 336 S.W.3d 242, 246 n.12 (Tex. Crim.App. 2011), *citing Jackson v. Virginia*, 443 U.S. at 315–316, 99 S.Ct. at 2787. We measure the sufficiency of the evidence by reference to the elements of the offense

as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex.Crim.App. 2009); *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik,* 953 S.W.2d at 240.

When an indictment alleges theft in the most general of statutory terms, the hypothetically correct jury charge embraces any and every statutorily defined alternative method of committing the offense that was fairly raised by the evidence. *Taylor v. State,* 450 S.W.3d 528, 535 (Tex.Crim.App. 2014), *citing Geick v. State,* 349 S.W.3d 542, 546 (Tex.Crim.App. 2011). The second amended information alleged that "on or about the 21st day of July, A.D., Two Thousand and Eleven, one ELIZABETH VISCAINO, hereinafter styled Defendant, did there and then violate § 31.03 of the Texas Penal Code by unlawfully appropriating property of more than $500.00 but less than $1,500.00 with intent to deprive the owner, to wit; PRESIDIO COUNTY, of property." Under a hypothetically correct charge, the State was required to prove beyond a reasonable doubt that on or about July 21, 2011, Appellant unlawfully appropriated property of $500 or more but less than $1,500 with the intent to deprive the owner, Presidio County, of the property. As raised by the evidence in this case, the hypothetically correct jury charge would authorize conviction under the following definitions.

An "owner" is defined as a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor, or is a holder in due course of a negotiable instrument. TEX. PENAL CODE ANN. §§ 1.07(a)(35)(A), (B)(West Supp. 2016); *Byrd,* 336 S.W.3d at 251. "Property" is defined in part to encompass tangible or intangible personal property including anything severed from the land, or a document—including money—that represents or embodies anything of value. TEX. PENAL CODE ANN. §§ 31.01(5)(B–C)(West Supp. 2016). "Possession" means actual care, custody, control, or management. TEX. PENAL CODE ANN. § 1.07(a)(39)(West Supp. 2016).

A person commits theft if she "unlawfully appropriates property with intent to deprive the owner of property."[1] TEX. PENAL CODE ANN. § 31.03(a)(West Supp. 2016). "Appropriate" means to acquire or otherwise exercise control over property other than real property. TEX. PENAL CODE ANN. § 31.01(4)(B)(West Supp. 2016). An intent to deprive an owner of his property means an intent to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner, to restore property only upon payment of reward or other compensation, or to dispose of property in a manner that makes recovery of the property by the owner unlikely. TEX. PENAL CODE ANN. §§ 31.01(2)(A–C)(West Supp. 2016); *Taylor,* 450 S.W.3d at 535.

Appropriation of property is unlawful if it is without the owner's effective consent. TEX. PENAL CODE ANN. § 31.03(b)(1)(West Supp. 2016). "Effective consent" includes

---

1. "Steal" means to acquire property or service by theft. TEX. PENAL CODE ANN. § 31.01(7)(West Supp. 2016). An "actor" is defined as a person whose criminal responsibility is in issue in a criminal action. Whenever the term "suspect" is used in the Penal Code, it means "actor." TEX. PENAL CODE ANN. § 1.07(a)(2)(West Supp. 2016).

consent by a person legally authorized to act for the owner. TEX. PENAL CODE ANN. § 31.01(3)(West Supp. 2016). Consent is not effective if induced by deception or coercion, or given by a person who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property. TEX. PENAL CODE ANN. §§ 31.01(3)(A),(E)(West Supp. 2016). "Deception" means:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

(C) preventing another from acquiring information likely to affect his judgment in the transaction;

(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed. TEX. PENAL CODE ANN. §§ 31.01(1)(A–E)(West Supp. 2016).

Viewing the evidence in the light most favorable to the verdict, we must determine whether any rational trier of fact could have found the essential elements of the offense of theft as so defined to a level of confidence beyond a reasonable doubt. *Taylor*, 450 S.W.3d at 536, *citing Geick*, 349 S.W.3d at 545.

Deferring to the jury's assignment of witness credibility, weighing the conflicting evidence, resolving conflicting inferences, and considering all the evidence in the light most favorable to the verdict, we conclude a rational juror could have found beyond a reasonable doubt the essential elements of the theft offense under a hypothetically correct jury charge. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Taylor*, 450 S.W.3d at 535–36; *Brooks*, 323 S.W.3d at 912; *Dobbs*, 434 S.W.3d at 170; *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240. We overrule Issue Two.

## DUE PROCESS COMPLAINTS

In her first issue, Appellant complains that she was denied a fair trial in violation of her due process rights. Within this issue, she presents sub-issues concerning improper comments by the prosecutor, witness opinion testimony regarding Appellant's guilt, and defense counsel's courtroom behavior and performance.

It has long been recognized that under the Due Process Clause of the Fourteenth Amendment, all persons are presumed innocent, and no person may be convicted unless each element of the offense is proved by the prosecution beyond a reasonable doubt. U.S. CONST. amend. XIV; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The United States Constitution guarantees a criminal defendant a right to a fair trial, not a perfect one. *Davis v. State*, 203

S.W.3d 845, 849 (Tex.Crim.App. 2006), *citing Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *United States v. Hasting*, 461 U.S. 499, 508–509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983); *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).

## Waiver

As an initial matter, we must decide whether Appellant has preserved error. To preserve error, the complaining party must inform the trial judge as to what she wants and why she thinks she is entitled to it. She must do so clearly enough for the judge to understand the issue and at a time when the trial court is in a position to do something about it. *Chase v. State*, 448 S.W.3d 6, 11 (Tex.Crim.App. 2014); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim.App. 2014)(in examining whether error has been preserved, courts are not "hyper-technical"). A timely objection must state the grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context [.]" Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1)(B)(error may not be predicated on a ruling admitting evidence unless a timely objection is made that "states the specific ground, unless it was apparent from the context").

■ Where the legal basis of a trial objection differs from that on appeal, the issue is not preserved for our consideration. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex.Crim.App. 2009). Failure to object at trial may waive errors even though they are of constitutional magnitude. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex.Crim.App. 2014), *cert. denied*, —— U.S. ——, 135 S.Ct. 1158, 190 L.Ed.2d 917 (2015), *reh'g denied*, —— U.S. ——, 135 S.Ct. 1756, 191 L.Ed.2d 717 (2015); *Clark*

*v. State*, 365 S.W.3d 333, 339 (Tex.Crim. App. 2012); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex.Crim.App. 2008); *Saldano v. State*, 70 S.W.3d 873, 889–90 (Tex.Crim. App. 2002)(equal protection claim related to admissibility of evidence waived by non-objection).

## Prosecutorial Misconduct

■ Appellant contends that during opening statement, the prosecutor improperly informed the jury of his opinion that Appellant had befriended Morales "in an attempt that I believe was to—was to eventually take advantage of her the way she probably does many people." This was followed by the State's comment that he was very proud of Morales. The State counters that Appellant waived error by failing to object.

■ Prosecutorial misconduct is an independent basis for objection that must be specifically urged to preserve error. *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). The proper method is to (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex.Crim.App. 1995); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim.App. 1993).

■ The trial court instructed the jury that opening statements are not evidence but are provided to aid the jury "in obtaining a general understanding of the nature of the case and the significance of the evidence as perceived by the State." Appellant failed to object to the prosecutor's opening comments and failed to offer prosecutorial misconduct as a basis for seeking a mistrial. Appellant counters that the State's comment was so prejudicial as to be incurable by instruction. Prosecutorial misconduct must be serious and continu-

ing, such that it undermines the reliability of the fact-finding process and results in a deprivation of fundamental fairness and due process of law. *See Berger v. United States*, 295 U.S. 78, 84, 88–89, 55 S.Ct. 629, 631, 633, 79 L.Ed. 1314 (1935)(new trial awarded where pronounced and persistent prosecutor misconduct had probable cumulative effect on jury); *Bautista v. State*, 363 S.W.3d 259, 262–63 (Tex.App.–San Antonio 2012, no pet.); *Jimenez v. State*, 298 S.W.3d 203, 214 (Tex.App.–San Antonio 2009, pet. ref'd), *quoting Rogers v. State*, 725 S.W.2d 350, 359–60 (Tex.App.–Houston [1st Dist.] 1987, no pet.). Although the prosecutor's comments were less than exemplary, they were not repeated nor were they of a magnitude sufficient to undermine the fact-finding process as would deprive Appellant of fundamental fairness and due process of law.

### Witness Opinion

■ Appellant next complains that Ranger Vajdos' opinion invaded the province of the jury, and thus denied her due process of law. We agree that the testimony was improperly admitted, but conclude the non-constitutional error did not have a substantial and injurious effect or influence the jury's verdict.

During direct examination, the State asked Ranger Vajdos about Appellant's statement and the conditions under which it was made. He explained that he did not speak Spanish but was present when the statement was given, and could speak regarding Appellant's demeanor as well as Trooper Trevino's translation during the interview. The State asked Vajdos if it was his opinion that Appellant was always free to leave because she was providing a voluntary statement. Defense counsel objected, and renewed his previous objection made outside the presence of the jury that any reference to Appellant's statement

should not be before the jury. The trial court overruled the objection, and the State continued to ask questions regarding Appellant's freedom to leave during the interview. The following colloquy occurred:

> THE STATE: And obviously that's about as much as we can go into in the statement with you. Throughout the course of an investigation, is it fair to say that you build an opinion?
>
> (DEFENSE COUNSEL): Objection, Judge. I object to the State trying to extract an opinion from the witness as to—as to who, if anyone, committed a theft in this case. Objection.
>
> THE STATE: That's his job. He's a police officer.
>
> THE COURT: Objection overruled.

The State then asked Vajdos to describe the method of reaching a conclusion regarding a crime. He responded that during the course of the investigation, the goal is to seek and obtain evidence, and that during the investigation of this case, the evidence led officers to obtain an arrest warrant for Appellant for the theft of $570. The colloquy continued:

> THE STATE: Do you ask for arrest warrants for people you believe are innocent?
>
> RANGER VAJDOS: Never.
>
> THE STATE: Okay. And would it be safe to say that you base the request for . . . an arrest warrant on consideration of motive?
>
> RANGER VAJDOS: Everything that I do is based off of the evidence[.]

Vajdos explained that a decision to request an arrest warrant is based on consideration of evidence, probable cause, motive, the facts of the case, interviews with defendants, and looking at the totality of the circumstances. The State continued:

> THE STATE: Would that entail an admission by the defendant?

RANGER VAJDOS: Yes.

THE STATE: Officer Vajdos, I hope you don't take offense to me calling you Jeff over and over. I need you to give me an opinion. I need you to tell me what your opinion is of—as to who took the money from the Clerk's Office (sic).

(DEFENSE COUNSEL): Objection, Judge. Objection to the State eliciting an opinion as to who took—again, who took the money in this case, whether it's Ms. Viscaino or anyone else. I object again.

THE COURT: Objection overruled.

RANGER VAJDOS: Based on all the evidence we obtained during the course of the investigation and the confession statement from Elizabeth Viscaino, we obtained the arrest warrant because Elizabeth Viscaino stole the money.

THE STATE: How sure are you?

RANGER VAJDOS: I'm positive she stole the money.

THE STATE: One hundred percent?

RANGER VAJDOS: A hundred percent.

A lay witness may offer opinion testimony if the opinion is (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact issue in the case. TEX. R. EVID. 701; *Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex. Crim.App. 2004). "An opinion is not objectionable just because it embraces an ultimate issue." TEX. R. EVID. 704.

The Court of Criminal Appeals has held that the perception requirement of Rule 701 is consistent with the personal knowledge requirement of Rule 602. *Fairow v. State*, 943 S.W.2d 895, 899 (Tex.Crim.App. 1997). Consequently, the proponent of lay-opinion testimony is required to establish that the witness has personal knowledge of the events upon which his opinion is based. *Id.* It is undisputed that Vajdos had no personal knowledge of the tax office transaction upon which to base his opinion of Appellant's guilt. His opinion was neither helpful to a clear understanding of his own testimony or to the determination of a fact issue such as Appellant's guilt or innocence. Most significantly, the Court of Criminal Appeals determined long ago that no witness is competent to opine as to guilt or innocence, which is a conclusion to be reached by the jury based on the instructions given them in the trial court's charge, coupled with the evidence admitted by the judge through the course of trial. *Boyde v. State*, 513 S.W.2d 588, 590 (Tex.Crim.App. 1974).

The State's question was improper, and the trial court erred in overruling Appellant's objection. *See Fairow*, 943 S.W.2d at 899 ("[I]f the witness's lack of personal knowledge yields testimony that amounts to 'choosing up sides' or an opinion of guilt or innocence, his opinion should be excluded."), *citing Boyde v. State*, 513 S.W.2d 588 (Tex.Crim.App. 1974). As a result, the jury was not provided with nor had the benefit of receiving a curative instruction. Ultimately we conclude that the admission of opinion was harmless.

Admission of improper opinion testimony is error of non-constitutional dimension. *See Wilson v. State*, 90 S.W.3d 391, 393 (Tex.App.–Dallas 2002, no pet.)(erroneous admission of testimony is non-constitutional error). An appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 884–85 (Tex.Crim.App. 2007). Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See*

*Casey*, 215 S.W.3d at 884–85; *Garcia v. State*, 126 S.W.3d 921, 927 & n.9 (Tex. Crim.App. 2004)(noting adoption of federal non-constitutional error standard as explained in *Kotteakos v. United States*, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

After examining the record of appellant's trial as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. First, Appellant's handwritten statement was admitted into evidence during the State's case-in-chief. Second, Appellant testified at trial. Consequently, the jury heard testimony from the only two parties to the tax-office transaction, Appellant and Morales, and it was able to assess their credibility as well as weigh and resolve the conflicting testimony given by each. Third, during closing argument, the State made no reference to Vajdos' opinion of Appellant's guilt. We therefore conclude that the admission of Vajdos' opinion was error that we must disregard. Tex. R. App. P. 44.2(b).

### Ineffective Assistance of Counsel

■ Appellant next complains that defense counsel's conduct resulted in a loss of credibility with the jury and resulted in ineffective assistance at trial. Because the record is inadequate to support her contentions, we disagree.

We review claims of ineffective assistance of counsel claims under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under the first prong, an appellant must show that "counsel's performance was deficient," i.e., that his assistance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064. Under the second prong, an appellant must prove prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex.Crim.App. 2001); *Johnson v. State*, 234 S.W.3d 43, 56 (Tex.App.–El Paso 2007, no pet.). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett*, 65 S.W.3d at 63; *Johnson*, 234 S.W.3d at 56.

Our review of counsel's performance is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). The burden to overcome that presumption falls upon the appellant. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Any allegation of ineffectiveness must be "firmly founded" in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005). To defeat the presumption of reasonable professional assistance, the record must affirmatively demonstrate ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999).

In part because of the need to ascertain trial counsel's strategy, courts have long recognized that the record on direct appeal is generally insufficient to show that counsel's performance was deficient under *Strickland*. *Id.* at 813. In the majority of instances, the record on direct appeal is "simply undeveloped" and cannot adequately reflect trial counsel's failings or explain counsel's trial strategy, upon which counsel's decisions may have been based. *Id.* at 813–14. In a rare case, we may address and dispose of the claim on direct appeal if counsel's ineffectiveness is apparent from the record. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex.Crim.App. 2000). This is a difficult burden as the record must demonstrate that counsel's perform-

ance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066; *Lopez v. State,* 343 S.W.3d 137, 143 (Tex.Crim.App. 2011); *Thompson,* 9 S.W.3d at 813. Typically, such complaints are best presented in an application for writ of habeas corpus which provides an opportunity for counsel to explain and the reviewing court to consider the facts, circumstances, and rationale for counsel's acts or omissions during the proceedings. *Thompson,* 9 S.W.3d at 814.

We initially observe that Appellant has affixed to her brief the affidavits of persons who were present during trial. These affidavits were not presented in a bill of exception nor filed in support of Appellant's motion for new trial, nor was this issue raised in the motion for new trial. Simply stated, the documents appended to Appellant's brief are not contained in the record on appeal. Tex. R. App. P. 34.2, 34.5(a), 34.6.

■ We cannot consider documents attached to a brief as an exhibit or appendix which are not a part of the appellate record. *See Whitehead v. State,* 130 S.W.3d 866, 874 (Tex.Crim.App. 2004)(affidavits not before the trial court at the time of its ruling cannot be reviewed on appeal); *Thompson v. State,* 612 S.W.2d 925, 928 (Tex.Crim.App. 1981)(articles attached to briefs and not presented in bill of exception not properly before appellate court as evidence); *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App. 1981)(affidavit not introduced at trial was not a part of the record on appeal under the provisions nor entitled to consideration by appellate court), *citing Keith v. State,* 89 Tex.Crim. 264, 271, 232 S.W. 321, 325 (1921)("affidavits, some of which are found in the record in this case, filed after the trial and after the order overruling the motion for new trial, are but incumbrances and entitled to no place in the record and to no consideration by this court"); *In Matter of Expunction of M.T.,* 495 S.W.3d 617, 622 (Tex.App.–El Paso 2016, no pet.). We are therefore restricted to considering matters that are presented in the record on appeal.

Appellant complains of trial counsel's behavior regarding the State's failure to state in the jury's presence that it had rested its case. The record shows that trial counsel initially sought to remove the jury for the purpose of moving for an instructed verdict but was hesitant to do so because the State had failed to specify in the jury's presence that it had rested. Outside the presence of the jury, counsel explained his concern. The trial court reconvened the jury, the State rested its case in the jury's presence, the jury was again removed, and trial counsel proceeded to move for instructed verdict. Additionally, Appellant is dissatisfied with counsel's conduct in objecting to the adequacy of the jury charge and the bases offered in support thereof, which occurred in the jury's absence. She next decries counsel's tactics in cross-examining Ranger Vajdos regarding statements made by Morales, Norma Arroyo, and Annabel Rodriguez because they were suspect and would have presumably been barred as hearsay. Tex. R. Evid. 802. In her view, the nature of counsel's questioning in general "reveals no discernable valid strategy," and counsel's attempt to object to the absence of the State's subpoenaed witness was deficient because he failed to explain the material and favorable nature of the witness's testimony.

We disagree that this is an unusual case where all the information needed to determine that ineffective representation is present in the record. Although the record clearly reflects the existence of a conten-

tious atmosphere between trial counsel, the prosecutor, and the trial judge, the record fails to adequately show counsel's trial strategy. It does not demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066; *Lopez v. State*, 343 S.W.3d 137, 143 (Tex.Crim.App. 2011); *Thompson*, 9 S.W.3d at 813. Appellant's contentions of ineffective assistance are not supported by the record and are accordingly without merit. Issue One is overruled. Having overruled both issues for review, we affirm the judgment of the trial court.

**TRIAL COURT'S CERTIFICATION OF APPELLANT'S RIGHT TO APPEAL**

The record does not indicate that Appellant was informed of her rights to file a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). To remedy this defect, we ORDER Appellant's attorney, pursuant to TEX. R. APP. P. 48.4, to send Appellant a copy of this opinion and judgment, to notify Appellant of her right to file a *pro se* petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Appellant's attorney is further ORDERED, to comply with all of the requirements of TEX. R. APP. P. 48.4.

Hughes, J., not participating